**STATE ex rel. STRAATMANN ENTERPRISES, INC., and Edward C. Straatmann and Nancy Straatmann, Appellants,**

v.

**COUNTY OF FRANKLIN, Franklin County Commission, Missouri Highway and Transportation Commission, and Missouri Department of Transportation, Respondents.**

No. WD 56741.

Missouri Court of Appeals, Western District.

Nov. 9, 1999.

David L. Baylard, Union, for Appellants.

Rich Tiemeyer, Bryce D. Gamblin, Mo. Highway & Transportation Comm'n, Jefferson City, for Respondent.

Before: ULRICH, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Straatmann Enterprises, Inc., and Edward C. and Nancy Straatmann appeal the summary judgment of the circuit court for the respondent, the Missouri Highway and Transportation Commission (the MHTC), on their petition: (1) for declaratory judgment seeking a declaration that the MHTC's action of voiding their outdoor advertising permits, pursuant to 7 C.S.R. 10–6.070(6)(C) (1994), was unlawful; and (2) for injunctive relief enjoining the MHTC from voiding the permits.

In their sole point on appeal, the appellants claim that the trial court erred in sustaining the MHTC's motion for summary judgment and in denying their counter-motion for summary judgment because, on the material facts alleged in its motion, the MHTC was not entitled to judgment, as a matter of law, upholding its action in voiding the appellants' sign permits. Specifically, the appellants claim that the MHTC was not permitted, by law, to void their permits for allegedly misrepresenting, in their applications to the MHTC for issuance of the permits, the zoning of their property as being commercial, because no such misrepresentation occurred in that, pursuant to § 226.520(3),[1] such permits were authorized for areas zoned "industrial, commercial or the like," and their property, pursuant to a conditional use permit, was zoned "like" commercial.

We affirm.

### Factual Background

On or about July 19, 1996, the Franklin County Planning and Zoning Commission (the PZC) approved the appellants' application for a conditional use permit to operate a commercial storage business on their property located in Franklin County, Missouri.[2] The property was zoned agricultural/non-urban. Following the issuance of the conditional use permit, the appellants erected forty-eight storage units on the property and in November 1996 commenced the business of leasing self-storage units. Thereafter, for purposes of county property taxes, Franklin County (the County) taxed the appellants' property at the commercial rate.

In August 1997, the appellants applied to the MHTC for three outdoor advertis-

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. Although the parties imply in their briefs that all three appellants applied for and received a conditional use permit to operate a commercial storage business, the record reflects that only the Straatmanns applied for and received such a permit.

ing permits, pursuant to § 226.550.1, RSMo Supp.1996, and 7 C.S.R. 10–6.070(2), in order to erect billboards on their property regarding their commercial storage business. On their applications, they stated that their property was zoned commercial. The MHTC approved one permit on August 5, 1997, and two on August 18, 1997. Upon approval of their applications, the appellants spent in excess of $26,000 purchasing materials and erecting poles for the three billboards. Sometime thereafter, the MHTC learned that the appellants' property was not zoned commercial but was instead zoned agricultural/non-urban. On October 27, 1997, the MHTC voided the appellants' outdoor advertising permits pursuant to 7 C.S.R. 10–6.070(6)(C) for misrepresentation of material facts by them on the permit applications. The MHTC subsequently notified the appellants of its decision.

On or about December 5, 1997, the appellants applied to the PZC to have their property re-zoned commercial. On December 31, 1997, the PZC refused to hold a hearing on the appellants' application, effectively denying it.

### *Procedural Background*

On January 29, 1998, the appellants filed their four-count petition in the Circuit Court of Franklin County, naming as defendants the County, the PZC, the MHTC, and the Missouri Department of Transportation (MoDot). In Count I, for a writ of *certiorari;* Count II, for Chapter 536 judicial review; and Count III, for declaratory judgment and injunctive relief, against the County and the PZC, the appellants sought review of the County and the PZC's denial of their application, without a hearing, for re-zoning; a declaration that the County and the PZC's actions were arbitrary, capricious, unreasonable, unconstitutional, and an abuse of discretion; and an order directing the PZC to re-zone the

property as commercial. In Count IV, against the MHTC and MoDot for declaratory judgment and injunctive relief, the appellants sought a declaration that the MHTC and MoDot's decision voiding their outdoor advertising permits was arbitrary, capricious, unreasonable, unlawful, and unconstitutional and an order directing the MHTC and MoDot to set aside their notice voiding the appellants' permits.

The record does not reflect when, but sometime prior to March 17, 1998, the MHTC and MoDot filed a motion to sever Count IV of the appellants' petition and transfer it to the Circuit Court of Cole County, claiming venue was improper as to that count. On March 5, 1998, the MHTC and MoDot filed a motion to dismiss MoDot as a party to the lawsuit, contending that the MHTC, which administers MoDot and had the authority to issue outdoor advertising permits, was the only proper party to the lawsuit. On March 17, 1998, a hearing was held on this motion.[3] On March 23, 1998, the trial court found that the joinder of Counts I, II, and III with Count IV was improper and that venue as to Count IV, pursuant to § 508.010(1), was proper in Cole County. The court ordered that Count IV of the appellants' petition be severed and transferred to the Circuit Court of Cole County.

On May 20, 1998, following transfer to Cole County, the MHTC and MoDot filed a motion for summary judgment. On June 26, 1998, the appellants filed their response and counter-motion for summary judgment.

On July 27, 1998, the trial court, apparently after a hearing, sustained the motion of the MHTC and MoDot to dismiss MoDot as a party to the lawsuit, finding that MoDot, as an administrative arm of MHTC, had no legal existence apart from it.

---

**3.** Although the record on appeal does not reflect what action the trial court took, if any, after March 17, 1998, and prior to March 23,

1998, we presume that the trial court took the MHTC and MoDot's motion to sever Count IV under advisement.

On November 24, 1998, the trial court sustained the MHTC's motion for summary judgment, while denying the appellants' counter-motion.

This appeal follows.

### Standard of Review

 It is undisputed by the parties, and we agree, that judicial review by the circuit court of the MHTC's decision voiding the appellants' permits was authorized by § 536.150 governing judicial review of noncontested administrative decisions.

In these cases, the circuit court does not use the competent and substantial evidence test employed in reviewing contested agency decisions. *Phipps v. School Dist. of Kansas City,* 645 S.W.2d 91, 94–95 (Mo.App.1982); [*State ex rel. Rice v. Bishop,* 858 S.W.2d 732, 736 (Mo.App.1993)]. Rather, it conducts a broader *de novo* review in which it hears evidence on the merits of the case, makes a record, determines the facts and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion. *Phipps,* 645 S.W.2d at 95–96; *Karzin v. Collett,* 562 S.W.2d 397, 399 (Mo.App.1978); § 536.150.1. The circuit court owes no deference to facts found or credibility assessed by the agency and, likewise, need not conform doubtful evidence to the administrative decision. *Phipps,* 645 S.W.2d at 95, 96.

*Barry Serv. Agency Co. v. Manning,* 891 S.W.2d 882, 887 (Mo.App.1995).

 On appeal from the circuit court of a noncontested administrative decision, we review the judgment of the circuit court, rather than the decision of the administrative agency. *Id.* As such, our review is essentially the same as for other judgments in a judge-tried case. *Id.* Thus, because this appeal comes to us by way of summary judgment, our review is the same as any other review to determine the propriety of summary judgment.

Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

### Discussion

#### I.

In their sole point on appeal, the appellants claim that the trial court erred in sustaining the MHTC's motion for summary judgment and in denying their counter-motion for summary judgment because there was genuine dispute of the material facts on which the MHTC relied for judgment, as a matter of law, upholding its decision voiding the appellants' sign permits, pursuant to 7 C.S.R. 10–6.070(6)(C). Specifically, the appellants claim that it was unlawful for the MHTC to void their permits for allegedly misrepresenting, in their applications for issuance of the per-

mits, the zoning of their property as being commercial, because no such misrepresentation occurred in that, under § 226.520(3), such permits were authorized for areas zoned "industrial, commercial or the like," and their property, pursuant to a conditional use permit, was zoned "like" commercial property. Their claim is based on their contention that § 226.520(3) should be interpreted such that, because they had obtained a conditional use permit from the PZC, allowing them to operate a commercial activity—a commercial storage business—on their property, it should be treated for purposes of § 226.520(3) as commercially zoned property, although it is undisputed that it is zoned as "agricultural/non-urban." Refined to its essence, the dispute in this case is over whether or not the appellants' property was zoned "commercial" for purposes of § 226.520(3).

■ Although the appellants challenge both the grant of the MHTC's summary judgment and the denial of their countermotion, our review is limited to the former. *Gorman v. Farm Bureau Town & Country Ins. Co.*, 977 S.W.2d 519, 527 (Mo.App. 1998) (citing *Missouri Property & Cas. Ins. Guar. Ass'n v. Petrolite Corp.*, 918 S.W.2d 869, 871 (Mo.App.1996)). To be entitled to summary judgment under Rule 74.04,[4] the MHTC, as the movant, must have established that (1) there was no genuine dispute as to the material facts on which it relied to recover and had the burden of persuasion at trial, and that (2) on these undisputed facts, it was entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin.*, 854 S.W.2d at 380–81. If the movant for summary judgment is a defending party, as is the case here, it can establish a *prima facie* case for summary judgment by one or more of the following three means: (1) showing facts that negate any one of the claimant's proof elements facts; (2) showing that the claimant, after an adequate

period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's proof elements; or (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defense. *ITT Commercial Fin.*, 854 S.W.2d at 381. In the MHTC's motion for summary judgment, it employed the first means by alleging facts which it asserted were undisputed and negated a required proof element of the appellants' request for declaratory judgment and injunctive relief.

The record reflects that the appellants' request for declaratory judgment and injunctive relief was based on their interpretation and application of § 226.520. This statute is part of the "Billboards Act," enacted by the legislature in 1965 to regulate outdoor advertising adjacent to the interstate and primary highway systems. §§ 226.500–.600. The act was in response to federal highway beautification laws, sometimes referred to collectively as the "Lady Bird Johnson Act" in honor of the wife of President Lyndon B. Johnson, which conditioned the receipt of state highway funds on compliance. *State ex rel. Missouri Highway & Transp. Comm'n v. Alexian Bros. of St. Louis, Inc.*, 848 S.W.2d 472, 473 (Mo. banc 1993).

Section 226.520 provides, in pertinent part:

> On or after March 30, 1972, no outdoor advertising shall be erected or maintained within six hundred sixty feet of the nearest edge of the right-of-way and visible from the main traveled way of any highway which is a part of the interstate or primary system in this state except the following[.]

Subject to certain statutory exceptions, this statute bans the erection or mainte-

---

**4.** All rule references are to the Missouri Rules of Civil Procedure (1998), unless otherwise indicated.

nance of outdoor advertising signs within the designated areas near the interstate or primary highway systems of this state. There is no dispute that the appellants' property was located near a highway covered by the statute, State Highway 100, and within a statutorily proscribed area, and that, as such, an outdoor advertising sign could not be erected thereon without the application of one of the exceptions set forth in § 226.520. In this respect, the appellants contend that the exception found in § 226.520(3) applies, which allows "[o]utdoor advertising located in areas which are zoned industrial, commercial or the like as provided in sections 226.500 to 226.600 or under the authority of law[.]" Thus, to be entitled to the relief which they requested, the appellants had the burden to prove, *inter alia*, that this exception applied. *Overland Outdoor Adver. Co. v. State ex´rel. Missouri Highway & Transp. Comm'n*, 877 S.W.2d 158, 160 (Mo.App.1994). The proof of this element forms the basis of the parties' disagreement on appeal, whether the appellants' property was zoned commercial such that this exception applied, prohibiting, by law, the MHTC's decision to void the appellants' permits.

In order to make a *prima facie* case for summary judgment by negating a proof element of the appellants' claim, the MHTC alleged in its motion for summary judgment facts which it asserted demonstrated that the exception of § 226.520(3) did not apply. Specifically, it alleged that the appellants' property was not zoned commercial, as stated in their applications for the issuance of the permits, but was instead zoned agricultural/non-urban and, thus, it had the lawful authority, pursuant to § 226.530, RSMo Supp.1995, and 7 C.S.R. 10–6.070(6)(C), to void their permits on the basis of misrepresentation of a material fact in their applications. While the appellants do not dispute the fact that their property was zoned agricultural/non-urban, they contend that, because they had been granted a conditional use permit by the PZC to operate a commercial storage

business on their property, it was zoned "like" commercial within the meaning of the phrase, "areas which are zoned industrial, commercial or the like," as found in § 226.520(3), so as to authorize the issuance of the permits. From this, they further contend that they did not materially misrepresent the zoning of their property in their permit applications. The issue then, in determining whether the trial court was correct in granting the summary judgment motion of the MHTC, finding that its decision in voiding the appellants' permits was not unlawful as they claim, is whether the language of § 226.520(3) referring to "areas which are zoned industrial, commercial *or the like*" (emphasis added) can be interpreted, as the appellants contend, as providing an exception to the general outdoor advertising ban of § 226.520 for property which is not zoned industrial or commercial, but for which there is a conditional use permit authorizing a commercial activity. For the reasons discussed, *infra*, the answer is no.

Pursuant to § 226.530, RSMo Supp. 1995, the MHTC

> is required to issue one-time permanent permits as provided in section 226.550 for the erection and maintenance of outdoor advertising along the interstate and primary highway systems and subject to section 226.540 to promulgate only those rules and regulations of minimal necessity and consistent with customary use to secure to this state any federal aid contingent upon compliance with federal laws, rules and regulations relating to outdoor advertising.

Section 226.550.1, RSMo Supp.1996, prohibits the erection or maintenance of outdoor advertising, as regulated in § 226.520, without a one-time permanent permit issued by the MHTC, with applications for such permits to be made on forms furnished by it and accompanied by the specified permit fee. Section 226.540 provides, in pertinent part:

Notwithstanding any other provisions of sections 226.500 to 226.600, outdoor advertising shall be permitted within six hundred and sixty feet of the nearest edge of the right-of-way of any interstate or primary highway in areas zoned industrial, commercial or the like and in unzoned commercial and industrial areas as defined in this section, subject to the following regulations which are consistent with customary use in this state:

. . .

(4) As used in this section, the words **"unzoned commercial and industrial land"** mean: That area not zoned by state or local law or ordinance and on which there is located one or more permanent structures used for a commercial business or industrial activity or on which a commercial or industrial activity is actually conducted whether or not a permanent structure is located thereon, together with the area along the highway extending outwardly six hundred feet from and beyond the edge of such activity. All measurements shall be from the outer edges of the regularly used improvements, buildings, parking lots, landscaped, storage or processing areas of the commercial or industrial activity and along and parallel to the edge of the pavement of the highway. On nonfreeway primary highways, where there is an unzoned commercial or industrial area on one side of the road as described in this section, the term "unzoned commercial or industrial land" shall also include those lands directly opposite on the other side of the highway to the extent of the same dimensions. Unzoned land shall not include:

(a) Land on the opposite side of an interstate or freeway primary highway from an unzoned commercial or industrial area as defined in this section;

(b) Land zoned by a state or local law, regulation, or ordinance;

(c) Land on the opposite side of a nonfreeway primary highway which is determined by the proper state authority to be a scenic area;

(5) **"Commercial or industrial activities"** as used in this section means those which are generally recognized as commercial or industrial by zoning authorities in this state, except that none of the following shall be considered commercial or industrial:

(a) Outdoor advertising structures;

(b) Agricultural, forestry, ranching, grazing, farming, and related activities, including seasonal roadside fresh produce stands;

(c) Transient or temporary activities;

(d) Activities more than six hundred sixty feet from the nearest edge of the right-of-way or not visible from the main traveled way;

(e) Activities conducted in a building principally used as a residence;

(f) Railroad tracks and minor sidings;

(6) The words "unzoned commercial or industrial land" shall also include all areas not specified in this section which constitute an "unzoned commercial or industrial area" within the meaning of the present section 131 of Title 23 of the United States Code, or as such statute may be amended. As used in this section, the words "zoned commercial or industrial area" shall refer to those areas zoned commercial or industrial by the duly constituted zoning authority of a municipality, county, or other lawfully established political subdivision of the state, or by the state;

(7) In zoned commercial and industrial areas, whenever a state, county or municipal zoning authority has adopted laws or ordinances which include regulations with respect to the size, lighting and spacing of signs, which regulations are consistent with the intent of sections 226.500 to 226.600 and with customary use, then from and after the effective date of such regulations, and so long as they shall continue in effect, the provisions of this section shall not apply to

the erection of signs in such areas. Notwithstanding any other provisions of this section, after August 28, 1992, with respect to any outdoor advertising which is regulated by the provisions of subdivision (1), (3) or (4) of section 226.520 or subsection 1 of section 226.527:

(a) No county or municipality shall issue a permit to allow a regulated sign to be newly erected without a permit issued by the state highways and transportation commission[.]

■ Pursuant to its statutory authority, the MHTC promulgated 7 C.S.R. 10–6.070, setting forth, *inter alia,* the requirements concerning applications for, and the issuance and voiding of, permits for outdoor advertising. Specifically, as to the voiding of permits, 7 C.S.R. 10–6.070(6)(C) provides, in pertinent part, that "[a]ny misrepresentation of material fact on any application under this section ... shall be grounds for the district engineer to void the permit." The appellants do not quarrel with the authority bestowed by this regulatory provision to void their permits. Rather, they contend that it does not apply in their case because they did not misrepresent any material facts on their applications in that their property was, for purposes of the § 226.520(3) exception, zoned "like" commercial as a result of their conditional use permit. Their contention is in direct conflict with 7 C.S.R. 10–6.040(2)(A) (1994), which provides, in pertinent part:

(A) Zoned Commercial and Industrial Areas. The following does not constitute zoned commercial or industrial area:

. . .

3. An area or district which requires a special use permit, special zoning classification or variance as a condition to the use of the area for an activity generally considered industrial or commercial.

Applying this regulation leads to the inescapable conclusion that a conditional use permit authorizing commercial activity, as in the case of appellants, will not satisfy the requirement of the exception found in § 226.520(3), allowing the issuance of a permit by the MHTC for outdoor advertising, that the property in question must be zoned commercial or industrial. This conclusion, however, does not end our inquiry. Inasmuch as the essence of the appellants' claim is that this result is unlawful in that it conflicts with the result contemplated by § 226.520(3), which is controlling over the regulation, *Pen–Yan Inv., Inc. v. Boyd Kansas City, Inc.,* 952 S.W.2d 299, 303 (Mo.App.1997) (holding that administrative regulations are invalid to the extent that they conflict with the law under which they are promulgated) (*citing Foremost–McKesson, Inc. v. Davis,* 488 S.W.2d 193, 197–98 (Mo. *banc* 1972)), we are required to resolve the issue raised by the appellants in support of their claim regarding the proper interpretation to be given § 226.520(3) and its application to their case.

In interpreting § 226.520(3), we are necessarily led to the decision of the Missouri Supreme Court in *Alexian Bros.,* in which the court was faced, *inter alia,* with the same task. There the court, first recognizing that "[w]e construe statutes only where they are ambiguous," *Alexian Bros.,* 848 S.W.2d at 474, concluded that the section was indeed ambiguous, given the disparate results in appellate cases addressing the issue. *Id.* Hence, because it found the statute in question to be ambiguous as to the interpretation to be given to the phrase "or the like," the court construed it "in a manner consistent with the legislature's intent, giving meaning to the words used within the broad context of the legislature's purpose in passing the law." *Id.*

In *Alexian Bros.,* the Missouri Supreme Court was called upon to decide whether a variance to a zoning ordinance constituted industrial or commercial zoning for purposes of the exception as provided for in § 226.520(3). Alexian Brothers Hospital (the hospital), a not-for-profit corporation offering hospital services to the public, purchased an unkempt vacant lot adjacent to Interstate 55 in an area of the City of

St. Louis, which was zoned residential, for the purpose of erecting an outdoor advertising sign as part of its marketing plan. *Id.* at 473. The hospital sought and was granted a variance by the Board of Adjustment which permitted the erection of the hospital's proposed sign on the lot. The MHTC subsequently notified the hospital that its sign violated §§ 226.520 and 226.540(1) and ordered its removal. *Id.* The hospital appealed the decision of the MHTC to the Circuit Court of the City of St. Louis, which affirmed the decision. The hospital appealed to the Missouri Court of Appeals, which affirmed. The hospital then sought and was granted transfer to the Missouri Supreme Court. *Id.* at 473.

In interpreting § 226.520(3), the court in *Alexian Bros.* held that the phrase "or the like" in subsection 3, viewed in light of the definitions found in § 226.540, set forth, *supra,* as to what constitutes "zoned commercial or industrial area," modified "industrial, commercial," not "zoned," and "recognize[d] that some other nomenclature is acceptable, e.g., manufacturing, provided the statutory purpose is met." *Id.* at 474. Thus, according to the court, § 226.520(3) "permits the erection or maintenance of an outdoor advertising sign if the municipal zoning law permits activities generally regarded as commercial or industrial, even if the municipal nomenclature is different." *Id.* at 474–75. In so stating, the court recognized that different municipalities may use various names or designations to refer to areas where the zoning law permits activities which are generally regarded as industrial or commercial in nature. *Id.* Accordingly, the court held that in the case of the hospital, § 226.520(3) did not permit the city to authorize the erection of an outdoor advertising sign in a residential area where the applicable zoning designation did not permit activities which were generally regarded as industrial or commercial because to do so would be to "allow a municipality to permit what state law expressly forbids." *Id.* at 475.

We recognize that our case is factually distinguishable from *Alexian Bros.* in that it involved a variance, which, unlike the conditional use permit in our case, authorized outdoor advertising, but no other commercial activity. The appellants argue that this fact is significant because the supreme court's decision in *Alexian Bros.* turned on whether there was "commercial activity" sufficient to trigger the statutory exception of § 226.520(3), presumably relying on the court's language that: "Section 226.520(3) permits the erection or maintenance of an outdoor advertising sign if the municipal zoning law permits activities generally regarded as commercial or industrial," *id.* at 474–75, and their conditional use permit authorized commercial activity. Although we appreciate the distinction between a "variance" and a "conditional use permit," and the fact that the appellants' permit did allow some commercial activity on the subject property, we reject their argument that the commercial activity allowed by their conditional use permit triggered the application of the § 226.520(3) exception.

■■■ A "variance is in the nature of a waiver of the strict letter of the zoning law upon substantial compliance with it and without sacrificing its spirit and purpose." *Rosedale–Skinker Improvement Ass'n v. Board of Adjustment,* 425 S.W.2d 929, 937 (Mo. *banc* 1968). It "is an authorized act of discretion on the part of the administrative board where indicated by special circumstances which justify the alleviation of hardship." *Wolfner v. Board of Adjustment,* 672 S.W.2d 147, 150 (Mo.App.1984). " 'Conditional or special use permits allow a land use authorized by a local legislative body and deemed conducive to the general welfare of the community, but which may be incompatible with the basic uses in the particular location in relation to surrounding properties, unless certain conditions are met.' " *State ex rel. Dotson v. County Comm'n,* 941 S.W.2d 589, 592 (Mo.App. 1997) (*quoting State ex rel. Columbia Tow-*

*er, Inc. v. Boone County,* 829 S.W.2d 534, 538 (Mo.App.1992)). Unlike in the case of a variance, "[h]ardship is not a prerequisite to issuance of a conditional use permit." *Waeckerle v. Board of Zoning Adjustment,* 525 S.W.2d 351, 359 (Mo.App. 1975). "'A "special permit" or "special exception" designates a species of administrative permission which allows a property owner to put his property to a use which the regulations expressly permit under conditions specified in the zoning regulations themselves. Some zoning laws or ordinances use the term conditional use permit . . . to refer to this type of administrative permission.'" *Ford Leasing Dev. Co. v. City of Ellisville,* 718 S.W.2d 228, 232 (Mo.App.1986) (*quoting* 82 Am.Jur. 2d *Zoning and Planning* § 281 (1976)). "In a shorthand fashion, it has been said that the 'basic difference between a use which is a special exception and one which requires a variance is that the former is legislatively *permitted* in a zone subject to controls whereas the latter is legislatively *prohibited* but may be allowed for special reasons.'" *One Hundred Two Glenstone, Inc. v. Board of Adjustment,* 572 S.W.2d 891, 894 (Mo.App.1978) (*quoting Verona, Inc. v. Mayor and Council,* 229 A.2d 651, 655[1] (N.J.1967)). As such, the appellants were restricted, pursuant to their conditional use permit, as an exception authorized by the applicable zoning laws, to the commercial activities specified[5] and were not free to conduct all the activities which were permitted for commercially zoned property.[6] In other words, the property

5. **Franklin County Planning and Zoning Commission Decision**
 In the matter of granting approval for a Conditional Use Permit for **Edward & Nancy Straatmann** under file number **960295**
 Whereas, the Franklin County Planning and Zoning Commission held a public hearing on June 18, 1996 for the purpose of gathering facts concerning an application submitted by Edward & Nancy Straatmann for self storage units in a(n) Agricultural/Non–Urban District located in Township 43 North, Range 1 East, Section 10 being tax parcel 18–2–10.0–0–009–002.000,
 Therefore, It Is Hereby Passed by the Franklin County Planning and Zoning Commission that the conditional use be granted based on the following findings
 There was voice opposition and petitions against the proposed development. The major concerns expressed were crime, upkeep of the buildings, landscaping, excessive illumination, property value retention, billboards.
 AND CONCLUDES that the proposed use is compatible with existing, permitted, surrounding uses for the reasons outlined in Section 53(d) Unified Land Use Regulations, after the following conditions have been placed on the conditional use permit:
 1. No storage is to take place outside the buildings.
 2. The cartway width of the access road is to be enlarged to 20 feet of gravel from building site to Old Highway 100.
 3. Screening along the south side of the fence will expand as the number of buildings increases, using screening Section 307, Type C, Unified Land Use Regulations.
 4. Screening along the north side of the property will span the entire property line of Mary's Subdivision Lot 4, using screening Type A, Section 307, Unified Land Use Regulations.
 5. The facility will be closed during the hours from 9:00 p.m. to 6:00 a.m.
 6. Illumination is to consist of directed/shielded illumination, lighting only the building area.
 7. The construction of the first building, the completion of landscaping/screening, and road improvements are to be completed within one year from the date of the permit issue date or the conditional use permit will be null and void.
 [Staff note: Mary's Subdivision was platted as a minor subdivision and recorded in Plat Book N, Page 999. A minor subdivision is designated only for the purpose of residential use. It is a given that to convert this lot to commercial use WILL require a nonresidential subdivision plat to be filed and approved. Review Committee was unanimous in recommending approval.]
 A Copy of this Decision is to be sent to the applicant and to the Franklin County Assessor, Real Property Division.
 An appeal may be filed in accordance with Section 92, Unified Land Use Regulations.
 THOMAS O SEPPELIN
 Chairman
 Franklin County Planning and Zoning Commission

6. The restriction or limitation on the commercial activities of the appellants on their land, as intended by the PZC, is evident from its refusal to re-zone when it became clear that

was not "zoned" commercial, as that term is generally used.

In *Alexian Bros.*, the court construed the statutory phrase at issue, "or the like," as modifying the zoning designation of the subject property necessary for the exception of § 226.520(3) to apply, "industrial [or] commercial," not the necessary act of zoning, as the appellants contend. *Alexian Bros.*, 848 S.W.2d at 474. The court's construction was in no way affected by the fact that it was dealing with a variance, as opposed to a conditional use permit. Whether dealing with a variance or a conditional use permit, any fair reading of *Alexian Bros.* reveals that the phrase in question would be construed the same. Hence, the statutory construction applied by the court in *Alexian Bros.* would apply equally here, causing us to conclude that for the exception of § 226.520(3) to be triggered, the appellants' property was required to be "zoned" for industrial or commercial activities. It was not. It is undisputed that it was zoned for agricultural/non-urban.

Given the foregoing discussion, we find that the MHTC made a *prima facie* case for summary judgment in that, on the facts alleged in its motion, it established that the appellants' applications for outdoor advertising permits contained material misrepresentations as to their property being zoned "commercial," which, pursuant to 7 C.S.R. 10–6.070(6)(C), authorized it to void the appellants' permits. Thus, in order to defeat the MHTC's motion for summary judgment, the appellants, in their response to the MHTC's motion, were required to "show—by affidavit, depositions, answers to interrogatories, or admissions on file— that one or more of the material facts shown by the [MHTC] to be above any genuine dispute is, in fact, genuinely disputed. *ITT Commercial Fin.*, 854 S.W.2d at 381. "For purposes of Rule 74.04, a 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts

the appellants were seeking to erect outdoor

of the essential facts." *Id.* at 382. As discussed, *supra*, in order to defeat the MHTC's motion, the appellants relied on their claim that there was a genuine dispute as to what constituted zoned for commercial, for purposes of the exception of § 226.520(3). For the reasons discussed, *supra*, we find that this claim is without merit, and as such, the trial court did not err in granting the MHTC's motion for summary judgment.

## Conclusion

The judgment of the circuit court sustaining the MHTC's motion for summary judgment is affirmed.

All concur.

advertising on their property.