**Larry BENTON, et al., Respondents,**

v.

**Tom DISMUKE, et al., Appellants.**

**No. ED 88757.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 26, 2007.

R.A. Wegmann, Hillsboro, MO, for Respondents.

Marc B. Fried, Dennis J. Kehm, Jr., Hillsboro, MO, for Appellants.

## OPINION

GLENN A. NORTON, Presiding Judge.

Members of the Jefferson County Planning and Zoning Commission ("Commission") appeal the trial court's reversal of their decision to approve a preliminary plat. We reverse.

## I. BACKGROUND

In connection with the development of a subdivision denominated Springbrook Farms, E & M Development Company ("Developer") purchased Lot B from the owner of the adjacent subdivision, Bayberry Farms. Lot B was not platted in the Bayberry Farms plat as common ground or as a buffer area. Developer thereafter submitted to the Commission, for approval, a preliminary plat known as Springbrook Farms, Plat 2 ("Preliminary Plat"). The Preliminary Plat sought to include Lot B within the Springbrook Farms subdivision.

The Commission conducted a public hearing and considered the Preliminary Plat as proposed by Developer. The Commission ultimately voted to approve the Preliminary Plat. Thereafter, directors of the Bayberry Farms Homeowners Association ("Homeowners") filed a petition for writ of certiorari contesting the decision of the Commission to approve the Preliminary Plat. Following an evidentiary hearing, the trial court issued its judgment finding that the Commission's decision to approve the Preliminary Plat was improper because Lot B was a " 'buffer' or 'common ground' " and must be vacated prior to preliminary plat approval. The court

ordered that the approval be set aside until Lot B is vacated from the Bayberry Farms subdivision. The Commission appealed.

## II. DISCUSSION

### A. Issue of Mootness

■ As an initial matter, we address Respondent's argument that the appeal is moot. Respondent contends that the appeal is moot for two reasons. First, Respondent claims that a new preliminary plat, which did not include Lot B, was submitted by Developer and approved by the Commission. Second, Respondent claims that the County Commission, which is the entity vested with the power to approve petitions for vacation, ultimately denied Developer's request for vacation of Lot B. Neither of these proceedings are in the Legal File, and therefore they are not before this Court on appeal. Nevertheless, we believe that these proceedings do not render the present appeal moot. Developer has not withdrawn the preliminary plat originally filed with the Planning and Zoning Commission. The County Commission's decision not to vacate Lot B leaves open the question of whether the preliminary plat that is the subject of this appeal can be approved absent the vacation. This matter, therefore, is not moot.

### B. Standard of Review

■ The Homeowners filed a petition for writ of certiorari seeking judicial review of the Commission's decision under Section 536.150 RSMo 2000,[1] which governs judicial review of noncontested administrative decisions. *See State ex rel. Straatmann Enterprises, Inc. v. County of Franklin*, 4 S.W.3d 641, 645 (Mo.App. W.D.1999). Judicial review by the circuit

---

1. All statutory references are to RSMo 2000.

court under section 536.150 is conducted *de novo. Id.* The circuit court hears evidence on the merits, makes a record, determines the facts and decides whether the administrative agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion. *Id.* "On appeal from the circuit court of a noncontested administrative decision, we review the judgment of the circuit court, rather than the decision of the administrative agency." *Id.* We review the judgment of the trial court to determine whether its decision rests on substantial evidence and correctly declares and applies the law. *Cade v. State,* 990 S.W.2d 32, 37 (Mo.App. W.D.1999). We will affirm unless the decision of the trial court is unsupported by substantial evidence, is against the weight of the evidence, erroneously declares the law or erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the judgment of the trial court. *BBCB, LLC v. City of Independence,* 201 S.W.3d 520, 531 (Mo.App. W.D. 2006). The court of appeals, however, "may weigh the evidence before the circuit court when the record engenders a firm belief that the judgment is wrong." *State ex rel. Rice v. Bishop,* 858 S.W.2d 732, 737 (Mo. App. W.D.1993).

**C. Lot B was not a buffer area or common ground.**

■ In its first point on appeal, the Commission argues that the trial court erred in finding that Lot B constituted common ground or a buffer area, and therefore must be vacated before the Preliminary Plat could be approved. The Commission argues that this finding is contrary to the evidence submitted to the court. We agree.

At the hearing, both parties stated that Lot B was not common ground. Counsel for the Homeowners further testified that there were no specific restrictions regarding the use of Lot B. Homeowners argue, however, that although it was not designated as a buffer area in the original plat, Lot B served as a green tree buffer for a number of adjoining Bayberry Farms residential homes. "Buffer Area" is defined under the Jefferson County Subdivision Regulations ("Regulations") as "[a] landscaped or natural area in a strip of land *identified on a site plan* or by a zoning order, established to minimize the impact of one land use from another land use." Reg. ¶ 3.1, at 39 (Aug. 29, 2005) (emphasis ours). The Bayberry Farms plat, which created Lot B, does not designate the lot as a buffer area. We find, therefore, that Lot B fails to meet the definition of a buffer area.

Neither the testimony of the parties, nor the definition found in the Regulations, supports a finding that Lot B is common ground or a buffer area. The parties agree that Lot B was not common ground and the Homeowners admit that Lot B was not expressly designated as a buffer area as required by the Regulations. Accordingly, the trial court's finding that Lot B constituted a buffer area or common ground was against the weight of the evidence and thus in error. Point one is granted.

Although we find that Lot B was not common ground or a buffer area, this finding is not determinative of the ultimate result in this case. For reasons stated below, we find that even if Lot B had been a common ground or buffer area, the Commission was not required to condition preliminary approval upon vacation of Lot B from the underlying subdivision.

### D. The trial court erred in requiring that Lot B be vacated prior to preliminary plat approval.

■ In its second point on appeal, the Commission argues that the trial court erroneously declared the law in finding that Lot B must be vacated prior to preliminary plat approval. We agree.

■ Plat approval in Missouri is a ministerial act. *Furlong Companies, Inc. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006). Accordingly, when a plat conforms to the requirements of the ordinance, a commission has only a ministerial duty to perform and is bound to approve the plat. *Id.* "Preliminary plat" is defined in Reg. ¶ 3.1, at 44, as:

> The preliminary drawing or drawings, described in these regulations, indicating the proposed manner or layout of the subdivision to be submitted to the Planning and Zoning Commission for approval.

The requirements for preliminary plats are set forth in the Regulations. Reg. ¶ 4.7b, at 57–60. The Homeowners did not allege that the Preliminary Plat violated any of these requirements. Nowhere in the requirements is there a statement requiring a subdivider to vacate an underlying subdivision prior to preliminary plat approval.

Additionally, the section of the Regulations providing for vacation states that "[w]henever any person or corporation *may* desire to vacate any subdivision or part thereof...." Reg. ¶ 4.8, at 69 (emphasis ours). It would appear, therefore, that vacation is at the discretion of the landowner and is not mandatory prior to preliminary approval. We recognize that under the Regulations the situation could arise where a particular parcel of land is governed by two conflicting indentures. We, however, are not ruling on the propriety of the Regulations. Instead, the central issue in this appeal is whether the Commission had any discretion to deny a preliminary plat that met all of the preliminary approval requirements delineated in the Regulations. We find that the Commission did not have such discretion. While conflicts between two governing indentures could certainly be problematic for the landowner, under the Regulations it is not the duty of the Commission to prevent such conflicts.

Preliminary plat approval is just that—preliminary. The Regulations provide that preliminary plat approval shall be effective for one year, at which time a final plat must be submitted to the Commission for approval. Reg. ¶ 4.7b, at 58. The Regulations state that "[a]pproval of the preliminary plat is an authorization to the subdivider to proceed with the development of the improvement plans and the final plat." *Id.* It is not an authorization to proceed with any work beyond the planning and development phase. Thus, the purpose of preliminary approval is to provide notice to interested parties and to allow for planning in the development of the property. In this case, the preliminary approval not only authorized Developer to proceed, but also allowed Developer to properly plan by informing Developer of specific requirements that must be met prior to final plat approval. In addition, the preliminary approval provided notice to the Homeowners of Developer's plans with respect to Lot B.

The Preliminary Plat met the requirements for preliminary approval set forth in the Regulations; therefore, the Commission had no discretion to deny the Preliminary Plat. Accordingly, we find that the trial court erred in setting aside the Commission's decision to grant the Preliminary Plat. Point two is granted.

## III. CONCLUSION

We find that the trial court erred in reversing the Commission's preliminary approval and imposing the requirement that Lot B must be vacated prior to preliminary plat approval. Accordingly, we reverse.

LAWRENCE E. MOONEY, J., dissents.

KENNETH M. ROMINES, J., concurs with J. NORTON.

LAWRENCE E. MOONEY, Judge, dissenting.

To the extent that the majority holds that a single parcel may be finally included within two distinct subdivisions, I dissent. The developer of a new subdivision has sought to have a parcel within an existing subdivision preliminarily platted as part of its new subdivision. The Subdivision Regulations at issue allow for partial or complete vacation of a subdivision, but the developer did not seek a partial vacation of the lot from the existing subdivision prior to its inclusion in the preliminary plat of the new subdivision. The Planning and Zoning Commission has argued that a single parcel may be finally included within two or more subdivisions with conflicting indentures.

The majority claims that it appears that partial vacation of a lot from a subdivision is at the discretion of the landowner. Not so. The Subdivision Regulations unequivocally provide that such partial vacation may be opposed and that the County Commission shall decide the issue.

Whenever any person or corporation may desire to vacate any subdivision or part thereof in which he shall be the legal owner of all lots, such person or corporation may petition the County Commission giving a distinct description of the property to be vacated and the names of the persons to be affected thereby; which petition shall be filed together with the appropriate filing fee with the Planning Department, who shall give notice of the hearing of the petition in a public newspaper. If no opposition be made to said petition, the County Commission may vacate the same by order with such restrictions they may deem necessary for the public good. No vacation shall take place unless a recommendation of the Planning Department has been provided, which shall be filed with said petition.

Jefferson County, Mo., Subdivision Regulations sec. 4.8 (Aug. 29, 2005).

And this is with good reason. An indenture agreement among subdivision-lot owners is a contract. *Maryland Estates Homeowners' Ass'n v. Puckett,* 936 S.W.2d 218, 219 (Mo.App. E.D.1996). As a lot-owner in the existing subdivision, the developer may owe certain contractual obligations to his fellow lot-owners. Before the developer is allowed to escape any indenture obligations he undertook, the other lot-owners have a right to oppose his secession and that decision rightly rests with the County Commission.