**Scott Andrew MOORE, by and through his Next Friend, Kevin MOORE, Plaintiff–Appellant,**

v.

**APPLETON CITY R–II SCHOOL DISTRICT, Defendant–Respondent.**

No. 28257.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 6, 2007.

Hurley D. Mahan, Clinton, MO, for Appellant.

Duane A. Martin, Kansas City, MO, for Respondent.

Melissa K. Randol Columbia, MO, for Amicus Curiae Missouri School Board Association.

NANCY STEFFEN RAHMEYER, Judge.

Scott Andrew Moore ("Appellant"), by and through his next friend, Kevin Moore, appeals the decision of the trial court affirming the suspension of Appellant from Appleton City R–II High School ("the School"). Appellant was suspended for violations of the School's weapons policy. Appellant brings two points on appeal; however, we will only consider Appellant's first point as point two fails due to substantial violations of Rule 84.04(d)(1).[1] In his first point, Appellant contends that the items he brought to the School do not properly qualify under any of the definitions in the School's weapons policy. We disagree and affirm the judgment.

Appellant is a student of the School. On two occasions, Appellant was in possession of "toy guns" while on school property. First, on February 5, 2006, Appellant possessed an Air Soft brand toy gun and with it shot a small piece of plastic from his vehicle, while located in the parking lot of the School, toward Kendall White, another student at the School, who was standing outside the School building. Kendall White was not struck by the piece of plastic. The Air Soft toy gun used a simple spring for propulsion of a plastic piece similar to a BB. Then, on February 7, 2006, Appellant was found to have two Air Soft toy guns locked inside his car while on the School property.

On February 7, 2006, the School Superintendent, Bob Elder, suspended Appellant for ten days as a result of the two events set forth above, acknowledging that the suspension could be made longer after the School Board of Education ("Board") meeting. Superintendent Elder justified immediate suspension of Appellant because he found Appellant's conduct prejudicial to the good order and discipline of the School. The stated reason for the suspension was Appellant's possession and use of a weapon on the School property as defined by the School District Board Policy. On February 15, 2006, the School Board met, at which time Kevin Moore was present; however, Kevin Moore was asked to leave at the time that an executive session was held. In the executive session that night, Superintendent Elder discussed the suspension of Appellant with the School Board.

In closed session on February 15, 2006, the School Board voted to suspend Appellant for one school year. There were no minutes discussing this matter or the vote. On February 16, 2006, Superintendent Elder sent a letter to Appellant and his parents advising them that Appellant was suspended for one year as a result of the actions set forth above.

Appellant appealed the one-year suspension and requested a hearing before the School Board. The hearing was held on March 14, 2006. At the hearing, Appellant was represented by counsel and was given the opportunity to call witnesses, cross-examine witnesses and present evidence. Appellant did not offer any evidence or recant his admission of possessing the guns or shooting at a student on the School property. At the hearing, Superintendent Elder testified that he considered Appellant's conduct to be prejudicial to good order and discipline in the School and in violation of Board policies and District discipline rules. After deliberation, the

1. All rule references are to Missouri Court Rules (2007), unless otherwise specified.

School Board voted on March 14, 2006, to sustain the 180 school day suspension of Appellant.

On March 22, 2006, Appellant, by Kevin Moore, filed a Petition for Review of the 180 school day suspension imposed by the School. The trial court held a de novo trial, which was requested by Appellant and is provided for by section 167.161,[2] on November 8, 2006. A decision was rendered by the court on December 19, 2006, upholding the 180 day out-of-school suspension. This appeal followed.

We shall first determine the appropriate standard of review that the trial court must use in the appeal of an administrative decision. Whenever an administrative agency is involved, a reviewing court, either at the trial level or at the appellate level, must take into consideration the rules and standards provided by the Missouri Administrative Procedures Act ("MAPA") located in chapter 536, RSMo. Additionally, the court must consider the statutes specific to the underlying agency. Here, section 167.171.3 indicates that the review procedure for the suspension or expulsion of a pupil "shall not be required to comply with the requirements applicable to contested case hearings as provided in chapter 536, RSMo, provided that appropriate due process procedures shall be observed which shall include the right for a trial de novo by the circuit court." Section 167.171.3. In consideration of this statute, which does provide for a de novo trial and does not provide for any deference to the decisions of the administrative hearing, the correct review is that of a noncontested administrative decision as governed by section 536.150.

■ In noncontested cases, as here, the circuit court does not utilize the competent and substantial evidence test employed in reviewing contested agency decisions. *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.,* 34 S.W.3d 266, 274 (Mo.App. W.D.2000); *State ex rel. Straatmann Enter., Inc. v. County of Franklin,* 4 S.W.3d 641, 645 (Mo.App. W.D.1999). Instead, the circuit court conducts a de novo review, in which it hears evidence on the merits of the case, makes a record, determines the facts, and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion. Section 536.150.1; *Straatmann Enter.,* 4 S.W.3d at 645. Unlike contested cases, the circuit court need not conform doubtful evidence to the agency's decision and does not defer to facts found or credibility assessed by the agency. *Straatmann Enter.,* 4 S.W.3d at 645. The court shall not, however, substitute its discretion for discretion legally vested in the administrative agency. Section 536.150.1.

■ We, as the court of review, do not review the decision of the administrative agency, but review the judgment of the circuit court. *Straatmann Enter.,* 4 S.W.3d at 645. "Appellate review of the circuit court's judgment in a noncontested case is essentially the same as the review for a court-tried case," and therefore, "the scope of appellate review is governed by Rule 73.01 as construed in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976)." *Missouri Nat. Educ. Ass'n,* 34 S.W.3d at 274–75 (citing *Cade v. State,* 990 S.W.2d 32, 37 (Mo.App. W.D.1999)). This Court will review "the circuit court's judgment to determine whether its finding that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence

---

**2.** All references to statutes are to RSMo 2000, unless otherwise specified.

and correctly declares and applies the law." *Id.* at 275.

In his first point, Appellant presents two arguments: first, that the trial court erred in determining that guidelines adopted in February 2003 were in fact part of the handbook and applicable to Appellant; and, second, that the trial court erred in determining that the two objects the Appellant possessed met any of the applicable definitions within the weapons policy.

Looking to the first argument, the facts at trial revealed that there were two sets of definitions involving weapons. The first was a student handbook, adopted on July 20, 2005, by the School Board, which would apply to the 2005–2006 school year. In the student handbook, "weapons" are defined as:

Firearms or weapons of any type are forbidden on school property. Any student who brings a weapon to school will be subject to suspension or expulsion. Any student who brings to school a blackjack, bow and arrows, concealable firearm, explosive weapon, firearm, firearm silencer, gas gun, knife, knuckles, machine gun, projectile weapon, rifle, shotgun, spring gun, switchblade knife, martial arts items or any other dangerous instrument that has not [sic] other necessary use by the student, will be subject to one calendar year expulsion beginning on the date of the offense. The District's Superintendent of schools may modify the expulsion requirement on a case-by-case basis. The U.S. Department of Education interprets the exception provision to permit school districts to discipline students with disabilities in accordance with the requirement of Part B of the Individuals with Disabilities Education Act (IDEA) and Section 504 or The Rehabilitation Act, and thereby maintain eligibility for federal financial assistance.

█ Appellant admits that he did receive and familiarize himself with the contents of the 2005–2006 handbook and, therefore, those definitions included within are applicable to him. At issue, however, is whether additional guidelines, which were adopted on December 17, 2003, apply to Appellant. In December of 2003, the School Board adopted a separate weapons "guide," including the definition of a weapon to include:

1. A firearm as defined in 18 U.S.C. § 921.

2. A blackjack, concealable firearm, firearm, firearm silencer, explosive weapon, gas gun, knife, knuckles, machine gun, projectile weapon, rifle, shotgun, spring gun, switchable knife, as these terms are defined in § 571.010, RSMo.

3. A dangerous weapon as defined in 18 U.S.C. § 930(g)(2).

4. All knives and any other instrument or device used or designed to be used to threaten or assault, whether for attack or defense.

5. Any object designed to look like or imitate a device as described in 1–4.

The trial court found these guidelines to be relevant policy and properly considered against the Appellant.

Appellant argues that the guidelines should not be considered because they were not in the student handbook and, therefore, the parents and students were not on notice of the more stringent policies. Appellant overstates the notice requirements of the disciplinary section of a student handbook, which need not be as detailed as the criminal code which imposes criminal sanctions. *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 686, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). The evidence indicates that, although a copy of the 2003 guidelines were not personally

handed to each student or parent, the guidelines were accessible to the parents and students through the School District's website and upon request at the School District's office.

Additionally, the evidence indicates that the 2003 guidelines were intended to be relevant policy to guide the School Board as they were unanimously adopted and the guidelines specifically provide that they will be used to "maintain the safety of the educational community." The statutory authority to adopt such guidelines specifically states that each school district may make "all needful rules and regulations for the organization, grading and government in the school district." *Independence–National Educ. Ass'n v. Independence School Dist.*, 223 S.W.3d 131, 144 (Mo. banc 2007) (quoting section 171.011). This Court finds that there is substantial evidence to support a finding that the 2003 guidelines were properly applicable to Appellant in this case.

Appellant's second argument is that the trial court erred in finding the "toy guns" to be dangerous instruments and, therefore, violations of the weapons policy which would warrant Appellant's suspension.

Appellant possessed two items: the first was an Air Soft gun made of clear plastic with an orange tip on the barrel; and the second was an Air Soft gun made of black plastic which was modified with a laser pointer taped to the barrel to act as a sight. Both Air Soft guns use a simple spring projection device and shoot small orange plastic spheres, slightly larger than a BB. The packaging of at least one of the guns includes language warning users of the dangers of firing at close range. The trial court found that the toy guns were not projectile weapons, but they were dangerous instruments:

> 4. Both Air Soft guns are "dangerous instruments", as defined in the school

district policy, in that they could cause injury (although not likely serious injury) if fired at another person. Furthermore, Exhibit B, the black Air Soft gun, is a "dangerous instrument" for the very reason that it resembles a real firearm. In today's climate of students being taken hostage, shot at and killed, possessing any item on a school property that resembles a firearm, and pointing that object at another student with the use of a laser pointer, creates an extremely dangerous situation. School security, law enforcement or other persons in the vicinity could easily misinterpret the situation and conclude that some immediate response was necessary.

Regardless of possible contradictions in the trial court's finding, this Court "is primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999). "Thus, the judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Id.* Regardless of whether the items were projectile weapons or dangerous weapons, the evidence substantially supports a finding that they were designed to imitate a firearm as defined in 18 U.S.C. § 930(g)(2). As the trial court noted, the guns could cause injury if fired at another person and one of them resembled a real firearm. Therefore, the two guns are properly considered weapons under the School District's weapons policy and, as such, the trial court's ruling was not an erroneous application of the law. Point one is denied.

Appellant presents the following as his second point relied on: "The trial court erred in upholding the 180 school day out-of-school suspension of Appellant in that

the trial court failed to provide de novo review as required by statute and instead used a deferential review standard." Appellant's point two violates Rule 84.04(d)(1). This rule provides:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

This point fails to "state concisely the legal reasons for [Appellant's] claim of reversible error" and fails to "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." *Id.* We have no idea from the point relied and, frankly, from Appellant's argument, on what he bases his claim of error. We cannot ascertain from the point relied on whether Appellant is complaining that the trial court improperly deferred to facts in the administrative decision, placed an improper burden of proof or persuasion on Appellant, or failed to conduct a trial de novo. It appears he is claiming the trial court used the wrong standard of review, however, as noted earlier in this opinion, the trial court properly held a trial de novo as required by section 167.161. Additionally, Appellant gives us no clue why the legal reasons

in the context of this case support his claim of reversible error. Here, the circuit court conducted a de novo review, in which it properly heard evidence on the merits of the case, made a record, determined the facts, and made a decision in view of those facts that found the decision of the School Board was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise an abuse of discretion. This, on its face, appears to be the proper standard for the trial court to follow. Section 536.150.1; *Straatmann Enter.*, 4 S.W.3d at 645.

Appellant is stating an abstract statement of law that does not comply with Rule 84.04(d)(4) and is unreviewable. Point two is denied.

The judgment of the trial court is affirmed.

BARNEY, P.J., LYNCH, C.J., concur.