34 S.W.3d 266 (2000)
MISSOURI NATIONAL EDUCATION ASSOCIATION, et al., Appellant-Respondent,
v.
MISSOURI STATE BOARD OF EDUCATION, et al., Respondent-Appellant.
Nos. WD 57903, WD 57904.
Missouri Court of Appeals, Western District.
December 26, 2000.
*272 Sally E. Barker, St. Louis, for appellant.
Gary L. Gardner, Jefferson City, for respondent.
Before EDWIN H. SMITH, P.J., ULRICH, J. and ELLIS, J.
ULRICH, Judge.
The Missouri National Education Association (MNEA) appeals the judgment of the trial court upholding the decisions of the Missouri State Board of Education (State Board) to grant the requests of 16 public school districts for exemptions from the requirement of section 165.016.1[1] that school districts expend a certain percentage of current operating costs for compensation of certificated staff or for revisions of the districts' base school year certificated salary percentages. MNEA claims that the trial court (1) erred in affirming the State Board's decisions to grant exemptions or revisions to the 16 school districts under section 165 .016.4 because it adopted and applied a legally incorrect construction of the exemption/revision provision, (2) abused its discretion in excluding evidence regarding the legislative history and intent of section 165.016 because the extrinsic evidence was necessary to clarify an ambiguity in the statute, (3) erred in affirming the State Board's determination that the base year revisions of certain school districts applied retrospectively, (4) erred in affirming the State Board's decisions to grant exemptions or revisions because the State Board merely "rubber stamped" the applications of the districts without applying any objective or principled criteria, and (5) erred in finding that the State Board's "Guidelines" did not qualify as rules requiring formal rulemaking procedures.
The State Board cross-appeals from the judgment of the trial court reversing the State Board's decisions to grant the requests of 13 other public school districts for exemptions or revisions. The State Board claims that the trial court erred in (1) failing to dismiss MNEA's petition for lack of standing to obtain judicial review of the State Board's decisions to grant exemptions or revisions under section 165.016 because MNEA members would not have had standing in their own right to seek judicial review of the decisions, (2) failing to join the 29 school districts whose *273 exemptions or revisions MNEA sought to set aside because the districts were necessary parties and could have lost by direct operation of the judgment, and (3) finding that 10 school districts insufficiently notified their certified staff of their requests for exemptions or revisions as required by section 165.016.5 and thus reversing and remanding the State Board's decisions to grant exemptions or revisions to those districts.
The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the trial court.

FACTS
In 1996, the Missouri General Assembly enacted section 165.016. Sections 165.016.1 and 165.016.2 require a public school district to expend a defined percentage of current operating costs for tuition, teacher retirement, and compensation for certificated staff each school year. § 165.016.1 and .2. This required certificated salary percentage is related to the base school year certificated salary percentage (base year percentage), which is the average ratio of the 1991-92 and 1992-93 school years' expenditures for tuition, teacher retirement, and certificated staff compensation to operating costs. § 165.016.1. For the 1994-95 and 1995-96 school years, a school district was required to spend on tuition, teacher retirement, and certificated staff compensation a percentage of current operating costs that was not less than three percent less than the base year percentage; and for the 1996-97 school year, a district was required to spend a percentage not less than two percent less than the base year percentage. Id.
Under section 165.016.4, the State Board may exempt a school district for one year from the requirements of section 165.016.1 or permanently revise the base year percentage of a school district upon receiving a request for exemption or revision from the district showing the reason or reasons for the request. § 165.016.4. Any school district requesting an exemption or revision must notify the certified staff of the district, and the State Board must consider any comments it receives from certified staff. § 165.016.5. If a school district fails to expend the required certificated salary percentage on tuition, teacher retirement, and certificated staff compensation and fails to obtain an exemption or revision that excuses its noncompliance, the district must pay a penalty to the building level administrative staff and the nonadministrative certificated staff in the year following the notice of violation in an amount equal to 110 percent of the amount necessary to bring the district into compliance. § 165.016.6.
The financial data from which a school district's certificated salary percentage is calculated is reported by the school district to the Missouri Department of Elementary and Secondary Education (DESE) on or about August 15 each year, after the close of the preceding school year on June 30. §§ 160.041.1 and 162.821, RSMo 1994. The DESE calculates a school district's certificated salary percentage and notifies the district of compliance or noncompliance with the requirements of section 165.016 for the preceding school year on or about January 1.
Between 1996 and 1999, 23 of the school districts[2] at issue in this appeal requested a one-time, permanent revision to their base year percentages, and six school districts[3] requested a one-year exemption from compliance with requirements of section *274 165.016. The State Board granted all 29 requests. Thereafter, the Missouri National Education Association (MNEA), a non-profit corporation that represents dues-paying members who are employed by Missouri public school districts and advocates for teachers' rights, filed its petition for judicial review in the circuit court seeking to set aside the decisions of the State Board granting exemptions or revisions to the 29 school districts. The MNEA claimed that the decisions of the State Board were unconstitutional, unlawful, unreasonable, arbitrary, capricious, or an abuse of discretion. Following oral argument in the case, the trial court entered its findings of fact, conclusions of law, and judgment. The court concluded that the exemptions and revisions granted by the State Board, including the methods used to calculate revised base year percentages, were supported by reasons that make effective the purpose of section 165.016.4. The trial court also concluded that any retrospective application of the exemptions or revisions granted by the State Board was clearly intended by section 165.016. Finally, the court concluded that the State Board granted exemptions and revisions based on its own reasoning and judgment in the exercise of its lawful discretion, did not adopt any guidelines or base any grant of an exemption or revision upon any guidelines, was not required to promulgate administrative rules governing the grant of exemptions or revisions, and considered certified staff comments in making its decisions to grant exemptions or revisions. The court upheld the State Board's decisions to grant exemptions and revisions to 16 of the school districts.[4] Citing deficiencies in the remaining 13 school districts' notices to certified staff, the trial court reversed the exemptions or revisions granted those districts[5] and remanded those districts' exemption and revision requests to the State Board for district notification of certified staff. This appeal by MNEA and the State Board followed.

STANDARD OF REVIEW
Judicial review of a noncontested administrative decision is governed by section 536.150. In noncontested cases, the circuit court does not utilize the competent and substantial evidence test employed in reviewing contested agency decisions. State ex rel. Straatmann Enter., Inc. v. County of Franklin, 4 S.W.3d 641, 645 (Mo.App. W.D.1999)(quoting Barry Serv. Agency Co. v. Manning, 891 S.W.2d 882, 887 (Mo.App. W.D.1995)). Instead, the circuit court conducts a broader de novo review in which it hears evidence on the merits of the case, makes a record, determines the facts, and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion. § 536.150.1, RSMo 1994; Straatmann Enter., 4 S.W.3d at 645. The circuit court does not defer to facts found or credibility assessed by the agency and need not conform doubtful evidence to the agency's decision. Straatmann Enter., 4 S.W.3d at 645. The court shall not substitute its discretion for discretion legally vested in the administrative agency. § 536.150.1, RSMo 1994.
On appeal, the appellate court reviews the judgment of the circuit court, not the decision of the administrative agency. Straatmann Enterprises, 4 S.W.3d at 645. Appellate review of the circuit court's judgment in a noncontested case is essentially the same as the review for a court-tried case. Id. Thus, the scope of appellate review is governed by Rule 73.01 as construed in Murphy v. Carron, *275 536 S.W.2d 30 (Mo. banc 1976). Cade v. State, 990 S.W.2d 32, 37 (Mo.App. W.D. 1999). Accordingly, the appellate court reviews the circuit court's judgment to determine whether its finding that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law. Id.

I. STANDING
The State Board's first point on its cross-appeal is that the trial court erred in failing to dismiss MNEA's petition for lack of standing. Standing is the requisite interest that a person must have in a controversy before the court. State ex rel. Missouri Health Care Ass'n v. Missouri Health Facilities Review Comm., 768 S.W.2d 559, 561 (Mo.App. W.D.1988), overruled on other grounds by West County Care Ctr., Inc. v. Missouri Health Facilities Review Comm., 773 S.W.2d 474 (Mo. App. banc W.D.1989). The issue of standing is not related to a person's capacity to sue; rather, it is "the interest of an adversary in the subject of the suit as an antecedent to the right of relief." Id. (quoting State ex rel. Schneider v. Stewart, 575 S.W.2d 904, 909 (Mo.App.1978)). A voluntary membership association may have standing in its derivative capacity by seeking judicial relief from injuries to its own rights or in its representative capacity by seeking to vindicate whatever rights its members may enjoy. Missouri Health Care Ass'n, 768 S.W.2d at 561. To have standing in its representative capacity, an association must allege that "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action...that would make out a justiciable case had the members themselves brought suit." Id. (quoting Citizens for Rural Preservation, Inc. v. Robinett, 648 S.W.2d 117, 133 (Mo.App. W.D.1982)). An association is permitted to sue on behalf of its members if: (a) its members have standing to bring suit in their own right; (b) the interests the association seeks to protect are germane to its purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Missouri Outdoor Advertising Ass'n, Inc. v. Missouri State Highways and Transp. Comm'n, 826 S.W.2d 342, 343 (Mo. banc 1992)(quoting Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).
The State Board argues that MNEA lacked standing to obtain judicial review of its decisions to grant exemptions or revisions under section 165.016 because MNEA members did not have standing in their own right to seek judicial review of the decisions. The State Board contends that MNEA members lacked standing in their own right because section 165.016 does not create individual rights. Specifically, the State Board asserts that section 165.016 does not grant to individual members of certified staff a right to compensation at a certain percentage of current operating costs or to recover the penalty for noncompliance with the statute's requirements.
Article V, Section 18 of the Missouri Constitution provides for judicial review of actions of administrative agencies that affect private rights. MO. CONST. art. V, § 18. Section 536.150 of the Administrative Procedure and Review Act, which furthers the constitutional purpose, affords judicial review of a noncontested case when the agency action determines the "legal rights, duties or privileges of any person." § 536.150.1, RSMo 1994. Section 536.150 comprehends only decisions involving individual rights and interests. May Dep't Stores Co. v. State Tax Comm'n, 308 S.W.2d 748, 756 (Mo.1958). Thus, to have standing for review under section 536.150, the agency action must affect private rights of the person seeking judicial review. Shawnee Bend Special Road Dist. "D" v. Camden County Comm'n, 800 S.W.2d 452, 457 (Mo.App. *276 S.D.1990); Missouri Health Care Ass'n v. Missouri Health Facilities Review Comm., 777 S.W.2d 241, 244 (Mo.App. W.D.1989).
Whether a particular person has status to contest the administrative action is a question of law. Wrinkle v. Int'l Union of Operating Eng'rs, Local 2, AFL-CIO, 867 S.W.2d 633, 637-638 (Mo. App. S.D.1993); Stewart, 575 S.W.2d at 909. Not every person who files a protest and is given an opportunity to be heard by an administrative agency has a right to appeal from the decision of the agency; rather whether a person has standing to seek judicial review of the decision depends upon a number of factors including the nature and extent of the interest of the person asserting standing, the character of the administrative action, and the terms of the statute that enables the agency action. Id. "The determination, ultimately, rests on policy as well as law so that which consideration among the several shall predominate to allow or deny status for judicial review depends upon the discerned legislative values." Stewart, 575 S.W.2d at 909.
Contrary to the State Board's assertion, MNEA members who were employed by the 29 school districts in this case did have standing in their own right to seek judicial review of the State Board's decisions granting exemptions or revisions to those school districts. By the clear language of the statute, the certified staff of a public school district is the intended beneficiary of section 165.016. Subsections 1 and 2 of the statute provide that a school district expend a certain percentage of current operating costs for compensation of certificated staff unless the State Board grants the school district an exemption or revision. § 165.016.1 and .2. Additionally, subsection 6 provides that if a school district fails to obtain an exemption or revision that excuses noncompliance, the district must compensate the building level administrative staff and nonadministrative certified staff the following year by an additional amount equal to 110 percent of the amount necessary to bring the district into compliance. § 165.016.6. As the intended beneficiary of the statute, the certified staff must be given an opportunity to contest before the State Board a school district's request under section 165.016.4 for exemption from the requirements of section 165.016 or a permanent revision of its base year percentage. Section 165.016.5 requires the school district to notify the certified staff of its intent to seek an exemption or revision. § 165.016.5. It then requires the State Board to consider any comments from certified staff before making its decision. Id. The State Board's decisions granting exemptions or revisions under section 165.016 to the school districts in this case did adversely affect a legally protectible interest of MNEA members who were employed as certified staff in those school districts. Those members, therefore, did have standing to challenge the State Board's decisions in their own right. Accordingly, MNEA, the association that represents those members, had standing under section 536.150 to challenge those decisions. The point is denied.

II. JOINDER OF SCHOOL DISTRICTS
In point two of its cross-appeal, the State Board claims that the trial court erred in failing to join the 29 school districts whose exemptions or revisions MNEA sought to set aside. The State Board argues that the districts were necessary parties and could have lost, and in the case of 13 school districts did lose, by direct operation of the trial court's judgment.
Rule 52.04 provides that a person shall be joined in an action if that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may, as a practical matter, impair or impede the person's ability to protect that interest. Rule 52.04(a)(2)(i). Such a person is a necessary person. Bunker R-III *277 School Dist. v.. Hodge, 666 S.W.2d 20, 23 (Mo.App. S.D.1984)(citing Kingsley v. Burack, 536 S.W.2d 7, 12 (Mo. banc 1976)).
A necessary person is one who is so vitally interested in the subject matter of controversy that a valid judgment cannot be effectively rendered without the party's presence. In re Estate of Remmele, 853 S.W.2d 476, 481 (Mo.App. W.D. 1993). An interest in the subject of an action does not include a mere, consequential, remote, or conjectural possibility of being affected by the result of the action in some manner. Bunting v. McDonnell Aircraft Corp., 522 S.W.2d 161, 169 (Mo. banc 1975); Brentmoor Place Residents Ass'n v. Warren, 774 S.W.2d 877, 879 (Mo. App. E.D.1989). Instead, the interest must be such a direct claim upon the subject matter of the action that the person will either gain or lose by direct operation of the judgment. Id.
If a necessary person cannot be joined, then the case is examined to determine whether the action may proceed in the absence of the nonjoined person or is to be dismissed, the absent person thus being regarded as indispensable. Rule 52.04(b); State ex rel. Emcasco Ins. Co. v. Rush, 546 S.W.2d 188, 195 (Mo.App.1977). The factors to be considered include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties; (2) whether protective provisions in the judgment can be utilized to lessen or avoid the prejudice; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Rule 52.04(b).
The subject of this action was the State Board's decisions to grant the requests of 29 school districts for exemptions from the requirements of section 165.016 that each of the school districts expend a certain percentage of current operating costs for compensation of certified staff or revisions of the districts' base year percentage under section 165.016.4. In this case, the school districts filed requests with the State Board for exemptions or revisions after learning that they were not in compliance with the requirements of section 165.016. The State Board granted the requests, and the school districts received exemptions from the requirements of section 165.016 or revisions of their base year percentages. The granting of the exemptions or revisions also excused the districts' obligations to pay penalties for their noncompliance. The school districts, therefore, claimed an interest in the action seeking to set aside the Board's decisions granting them exemptions or revisions. The possibility that the school districts would be affected by the judgment of the trial court was not remote or conjectural. Rather, the outcome of the proceeding would directly determine whether the school districts would be required to pay the required statutory certificated salary percentage plus penalties for their noncompliance or receive exemptions from the requirements of section 165.016 or revisions of their base year percentages. A final judgment in the absence of the districts reversing the State Board's decisions to grant the school districts exemptions or revisions would impair the districts' ability to protect their interest. While the State Board did defend its decisions to grant exemptions and revisions to the school districts, the rights involved in the proceeding for judicial review were the school districts' not the State Board's. If the exemptions and revisions of the school districts were set aside by the trial court, as they were in the case of 13 school districts, the school districts and not the State Board would experience the financial effect.[6] The 29 school districts whose exemptions or revisions MNEA sought to set aside were, therefore, necessary parties in the judicial review proceeding and should have been joined.
*278 In the case of the 16 school districts whose exemptions or revisions were upheld by the trial court,[7] the failure to join those school districts in the action for judicial review was not prejudicial. The trial court's judgment benefited those districts; the granting of their exemptions and revisions were upheld. The 16 school districts obtained complete relief. A better outcome was not possible for the districts. See Simpson v. Shelker, 747 S.W.2d 259, 260 (Mo.App. E.D.1988)(personal representative of estate was not indispensable party in proceeding on petition to discover assets where estate received all the assets sought to be discovered and there was complete relief in absence of the representative). Consequently, although these 16 school districts were not joined in the action, they were not indispensable parties. The trial court's failure to join these school districts was not erroneous.
The court's failure to join the remaining 13 school districts whose exemptions or revisions were reversed by the trial court,[8] however, was erroneous. A final judgment rendered in this case in the absence of these school districts could adversely affect the districts' ability to protect their interest and could be highly prejudicial to them. As such, the trial court's judgment reversing the State Board's decisions to grant exemptions or revisions to these school districts is reversed, and the case is remanded to the trial court for joinder, if feasible, of these necessary parties.[9] While the record discloses no reason why the districts cannot be joined, the trial court must determine the feasibility of their joinder. Feinberg v. Feinberg, 924 S.W.2d 328, 331 (Mo.App. E.D.1996); Bunker, 666 S.W.2d at 24-25. If joinder is feasible, the districts must be added for whatever additional evidence is necessary and appropriate. Rule 52.04(a); Feinberg, 924 S.W.2d at 331; Bunker, 666 S.W.2d at 25. If joinder of the districts is not feasible, the trial court must decide whether the districts are indispensable parties under Rule 52 .04(b). Rule 52.04(b); Feinberg, 924 S.W.2d at 331; Bunker, 666 S.W.2d at 25.

III. EXEMPTIONS AND REVISIONS UNDER SECTION 165.016.4
In points one, two, and four of its appeal, MNEA claims that the trial court erred in affirming the State Board's decisions to grant exemptions or revisions to 16 school districts under section 165.016 .4. It contends that the trial court adopted and applied a legally incorrect construction of the exemption/revision provision. It claims that section 165.016.4 is ambiguous and, therefore, requires resort to rules of statutory construction to determine legislative intent. MNEA also contends that the trial court abused its discretion in excluding from evidence exhibits and testimony concerning the legislative history of the statute arguing that the evidence was admissible to clarify the ambiguity. Finally, MNEA contends that the trial court erred in finding that the State Board did not act arbitrarily or capriciously in granting the 16 school districts exemptions or revision.
Section 165.016 requires a public school district to expend a defined percentage of current operating costs for compensation of certificated staff each year. § 165.016.1 and .2. The required percentage is related *279 to the base year percentage, which is defined in subsection 1 of the statute:
The base school year certificated salary percentage shall be the two-year average percentage of the 1991-92 and 1992-93 school years except as otherwise established by the state board under subsection 4 of this section.
§ 165.016.1. Section 165.016.4 provides that the State Board may exempt a school from the requirements of sections 165.016 for the school year for which the exemption is sought or permanently revise the base year percentage of a school district upon receiving a request for exemption or revision from the district showing the reason or reasons for the request. § 165.016.4. Specifically, it provides:
4. (1) The state board of education may exempt a school district from the requirements of this section upon receiving a request for an exemption by a school district. The request shall show the reason or reasons for the noncompliance, and the exemption shall apply for only one school year. Requests for exemptions under this subdivision may be resubmitted in succeeding years;
(2) A school district may request of the state board a one-time, permanent revision of the base school year certificated salary percentage. The request shall show the reason or reasons for the revision.
Id. MNEA argues that the terms "reason or reasons" in section 165.016.4 are ambiguous because the statute does not define or limit the reasons that will justify either an exemption or a revision. It also argues that the provision is ambiguous because it does not specify how a new base year revision should be calculated. MNEA contends that an interpretation that a school district may grant an exemption or revision based upon any reason offered by the school district, however illogical, would be inconsistent with the legislative intent that a school district expend a certain percentage of its current operating expenses for certified staff salaries, thus allowing the exception in the statute to swallow the general rule. MNEA urges this court to construe the exemption/revision provision to mean that an exemption should be reserved only for excusing non-compliance for one school year due to "unforeseeable or temporary, unusual conditions" and that a base year percentage revision should be granted only "when the statutorily defined certified salary percentage standard is unusually non-representative of a district's historical spending pattern in the years prior to 1991-92."
In interpreting a statute, a court is to ascertain the intent of the legislature from the language used and give effect to that intent if possible. Gott v. Director of Revenue, 5 S.W.3d 155, 158 (Mo. banc 1999). The language used should be given its plain and ordinary meaning. Spradlin v. City of Fulton, 982 S.W.2d 255, 258 (Mo. banc 1998). Where the language of the statute is clear, a court must give effect to the language as written. Emery v. Wal-Mart Stores, Inc., 976 S.W.2d 439, 449 (Mo. banc 1998). A court is without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language. Id. A court will look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislation. Spradlin, 982 S.W.2d at 258. If the statutory language is clear and unambiguous, "[t]here is no room for construction even when a court may prefer a policy different from that enunciated by the legislature." Kearney Special Road Dist. v. County of Clay, 863 S.W.2d 841, 842 (Mo. banc 1993). Once a law has been adopted through legislative enactment and its provisions are express and unambiguous, a court must enforce the law according to its terms, not by what may have been intended by the enactment. Pipe Fabricators, Inc. v. Director of Revenue, 654 S.W.2d 74, 76 (Mo. banc 1983); Missourians for Honest Elections v. Missouri Elections Comm'n, 536 S.W.2d 766, 775 (Mo.App.1976). Thus, *280 statements and representations made prior to enactment of the law by its supporters or opponents are not admissible if the language of the statute is clear and unambiguous. Id.
The language of section 165.016 is clear and unambiguous. From the language used, the legislature intended that a public school district expend a certain percentage of its current operating costs for compensation of its certified staff unless the State Board grants an exemption from compliance for the year for which the exemption is sought or a one-time revision of the district's base year percentage. The statute vests the State Board with sole discretion to grant a school district an exemption or revision and to establish the revised base year percentage upon receiving from the district a request showing the reason or reasons for the exemption or revision. The legislature did not intent to limit the State Board's exercise of discretion to grant an exemption or revision. The statute does not require that the reason or reasons cited by the school district for an exemption or revision be "unusual or required by necessity" as urged by MNEA, and this court is without authority to inculcate such meaning into the unambiguous statute. Furthermore, because the statute unambiguously grants the State Board discretion to grant an exemption or revision, resort to the rules of statutory construction and interpretation are unnecessary. Exhibits and testimony concerning the legislative history of the statute were, therefore, inadmissible in this case, and the trial court did not abuse its discretion in excluding such evidence.
The legislature's vestiture of sole discretion in the State Board to grant an exemption or revision to a school district does not, however, preclude judicial review of the State Board's action. Barry Serv. Agency Co. v. Manning, 891 S.W.2d 882, 892 (Mo.App. W.D.1995). The discretion of the State Board to grant an exemption or revision is not unbridled and is subject to judicial review under section 536.150, which governs the review of noncontested administrative decisions. While the reviewing court may not substitute its discretion for discretion legally vested in an administrative agency, it does determine whether the agency exercised its discretion lawfully:
the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.
§ 536.150.1, RSMo 1994; State ex rel. Rice v. Bishop, 858 S.W.2d 732, 736-737 (Mo. App. W.D.1993). Thus, the trial court's judgment is confined to "exclusively legal considerations." Bishop, 858 S.W.2d at 736 (quoting Phipps v. School Dist. of Kansas City, 645 S.W.2d 91, 95 (Mo.App. W.D.1982)). Although the trial court may not infringe on authority reserved to the legislative or executive branches, the court must decide whether the agency acted in an unconstitutional, unlawful, unreasonable, arbitrary, capricious, or abusive manner. § 536.150.1, RSMo 1994; Manning, 891 S.W.2d at 892; Bishop, 858 S.W.2d at 737. An appellate court, in turn, reviews the trial court's judgment to determine whether its finding that the agency decision was or was not lawful rests on substantial evidence and validly decides the questions of law. Bishop, 858 S.W.2d at 737.
MNEA argues that the trial court erred in concluding that the State Board did not act arbitrarily or capriciously in granting the 16 school districts exemptions or revisions. It contends that the State Board and its staff merely "rubber stamped" the requests of the school districts without applying any objective or principled criteria. MNEA argues that "[n]either DESE nor the State Board substantively analyzed the propriety of the reasons for the requests or the methodology of the alternate Base Year Revisions requested."
*281 An administrative agency acts unreasonably and arbitrarily if its decision is not based on substantial evidence. Manning, 891 S.W.2d at 892. Whether an action is arbitrary focuses on whether an agency had a rational basis for its decision. State ex rel. Div. of Transp. v. Sure-Way Transp., Inc., 948 S.W.2d 651, 655 n. 4 (Mo.App. W.D.1997). Capriciousness concerns whether the agency's action was whimsical, impulsive, or unpredictable. Id. To meet basic standards of due process and to avoid being arbitrary, unreasonable, or capricious, an agency's decision must be made using some kind of objective data rather than mere surmise, guesswork, or "gut feeling." Manning, 891 S.W.2d at 893. An agency must not act in a totally subjective manner without any guidelines or criteria. Id. at 893-894.
The evidence before the trial court revealed that the State Board did not act arbitrarily or capriciously in granting exemptions and revisions to the 16 school districts at issue. First, evidence was offered that the DESE and the State Board followed a specific procedure in reviewing and deciding each school district's request. Each of the 16 school districts submitted a written request for an exemption or revision to the State Board. Each request included the reasons for the request. DESE, in turn, reviewed each request to determine if the district provided reasons for its request and if the mathematical calculation was accurate. DESE then prepared a summary of each request, any certified staff comment received, and the recommendation of the Commissioner of Education, the chief administrative officer of DESE. The summary was included as an item on the State Board's monthly meeting agenda with the details of the district's request provided to the State Board as a backup to the summary. The request of each district was then considered by the State Board at its monthly meeting and ultimately granted.
Moreover, the evidence presented to the trial court revealed that a rational basis existed for the State Board's decision to grant each of the 16 school districts an exemption or revision. The State Board did not base its decisions on mere surmise or guesswork but on objective reasons provided by the districts. The following is a list of reasons the school districts included in their requests for exemptions or revisions to the State Board:
1. Fulton 58 (permanent revision)(1) the district received $203,436.40 less in state funding in 1991-92 than in 1990-91 due to the governor's withholding of state aid for desegregation and (2) in 1991-92 and 1992-93, the district decided not to cut back on staff, not to freeze salaries, and not to disallow upward movement on the salary schedule, but to cut other operating expenditures, resulting in higher certificated salary percentages for those years than in any other years from 1987-88 through 1995-96.
2. Cameron C-1 (exemption for 1994-95 school year)(1) the district was financially stressed due to overspending; (2) declining balances from 1991-92 through 1994-95 with some increases in 1995-96; (3) financially distressed status in 1995-96 based on 1994-95 data; (4) the district increased the teacher base pay in 1994-95 by $300 to $19,600 and in 1995-96 by $500 to $20,100; and (5) the district provided for additional personnel, salary increases for staff, and capital improvements in instructional areas.
3. Lebanon R-III (permanent revision)(1) tuition received from other districts inflated the certificated salary percentage; (2) the hiring of new staff to replace old staff; (3) budget cuts in 1991-92 due to governor's withholding of state aid; (4) increased utility and maintenance costs resulting from building additions since 1995; (5) reinstatement of non-certificated staff cut 1991-92 and 1992-93; (6) an increase in school transportation costs; (7) computer maintenance; (8) extension of health insurance to non-certificated staff; (9) tuition reimbursement *282 for certified staff; (10) increase in nursing staff.
4. Van-Far R-I (exemption for 1994-95 school year) (1) two special education aids hired and legal services required for two special needs students; (2) computer coordinator was hired for 89 days; and (3) without these expenditures, the district would have been in compliance.
5. Marshall (permanent revision)(1) 1991-92 and 1992-93 came during the middle of financial difficulty for the district; (2) during 1991-92, the governor withheld $75 million in state aid, and the district reduced spending for supplies and support staff, but did not compress salary schedule; and (3) 24 noncertificated aids, nurses, and staff were hired since 1992-93.
6. North Wood R-IV (permanent revision)(1) the district provides on-site education for kindergarten through eighth grade; (2) excluding high school tuition paid to other districts to educate grades nine through twelve would allow the district's percentage to be based on expenditures paid for kindergarten through eighth grade on-site; (3) number of students for which tuition was paid peaked in 1992-93 with 110 and decreased since to 84; (4) amount paid in tuition peaked in 1992-93 at $402,334 and decreased in 1995-96 to $306,424; (5) the district had increased the amount paid for certificated salary by approximately $173,000; (6) the district hired non-certificated aids in 1994-95 and 1995-96 to assist teachers with class size and leased modular units to assist with class size; and (7) when experienced teachers leave, they are replaced by teachers at the lower end of the salary schedule.
7. Raytown C-2 (permanent revision)(1) in 1990-91, the district instituted an early retirement incentive to replace long tenured staff members with less experienced staff in the hope of reducing expenditures; (2) a local task force identified additional cost saving measures; (3) the fund balance declined to its lowest point in 1993-94; (4) the Kansas City sales tax ended in 1993, which was a revenue loss not replaced by any other source; and (5) the district was held harmless on the formula in the 1993-94 and 1994-95 school years.
8. Wright City R-II (permanent revision)(1) the 1991-92 school year reflected a 5% salary increase and added teaching positions, resulting in an increase in certified salary cost of 6.8%; (2) state aid was cut that year after the salary increase decision was made; (3) in 1992-93, the district cut $300,000 in general operations, salaries were frozen, and no new positions were added; and (4) in April 1993, the voters approved a $.30 tax levy increase that was used to add teaching positions and salary increases.
9. Willard R-II (permanent revision) (1) the governor withheld state aid in 1991-92; (2) the district continued efforts to employ and offer raises to certificated teachers in 1991-92 and 1992-93 despite tight funding resulting an unusually high certificated salary percentage for those years; (3) the district is growing in enrollment at about 100 students per year requiring construction of new classrooms, hiring of certificated staff, increased utility costs, and additional supplies; (4) increase in certificated salaries is three times the increase of other expenses; (5) without an adjustment, the district will have to make significant cuts in operating expenses not related to certificated personnel; (6) the salary schedule is competitive with the highest base salary in the area.
10. Laredo R-VII (permanent revision)(1) this small K-8 district pays tuition on all of its high school students and 1994-95 and 1995-96 reflect the district's lowest tuition payments; (2) in 1995-96 the district was 4.92% below the base percentage because of a $24,000 decrease in tuition expenditures and if the tuition expenditures had been equal *283 to those of 1994-95, the district would have been 3.39% below the base percentage; (3) if the district had been incurring tuition costs at level of the 1991-92, 1992-93, and 1993-94 school years, it would have been in compliance for 1995-96; (4) though the number of students on which tuition is spent is increasing, it is an unstable number and requires the district to save money in low years to have it available in high years.
11. Senath-Hornersville C-8 (permanent revision)(1) in 1991-92 and 1992-93, the district intentionally kept operating costs low to attain comfortable year-end balances and in 1991-92, the Governor withheld funds, both of which contributed to the certificated salary percentage being inordinately high; (2) several new programs necessitated additional staff; and (3) additional operating expenses were incurred to refurbish one building for a new program.
12. Fort Osage R-I (permanent revision)the 1992-93 certificated salary percentage was inflated above average because the district reduced incidental fund expenditures to offset revenue shortfalls while honoring salary increases to certificated staff.
13. Sarcoxie R-II (permanent revision)(1) the 1991-92 and 1992-93 certificated salary percentages were skewed by the Governor withholding state funding; (2) in 1994-895, noncertificated aides increased because of an increase in the disabled student population; (3) utility expenses increased.
14. Moberly (permanent revision)(1) the 1991-92 and 1992-93 school year certificated salary percentage calculations were impacted by the Governor's withholding of state money in 1991-92; (2) the district decided to honor all teacher contracts and cut the General Fund by 3.2% in 1991-92 and by 8.6% in 1992-93, resulting in artificially high certificated salary percentages for those years; (3) certificated salaries have increased over $300,000 over each of the past three years.
15. Normandy (permanent revision) (1) in 1991-92 and 1992-93, the district was financially stressed due to over spending on a capital projects plan; (2) the district had to borrow $5 million to begin the 1991-92 school year; (3) the district reduced all support services and classified personnel; (4) certificated salaries became inflated as a percentage of operating costs; (5) the 1988-89 and 1989-90 school years are the years immediately prior to financial distress; (6) in 1990-91, incidental fund expenditures were reduced 17% whereas teacher fund expenditures were reduced 7%; (7) by the end of 1992-93, incidental fund expenditures were 10% below those of 1989-90, whereas teachers fund expenditures were less than 2% below those of 1989-90.
16. University City (permanent revision)(1) since 1992-93, a number of veteran teachers have retired and have been replaced by less experienced and lower compensated teachers reducing the percentage of the budget spent on certificated salaries; (2) in 1996-97, there was a 42% reduction in group medical insurance, which is a certificated salary expenditure; (3) a textbook replacement cycle was implemented increasing the amount of noncertificated expenses; and (4) the district has been in compliance with the current base year percentage through 1996-97.
The State Board's decisions were neither whimsical nor impulsive. The procedure utilized by the State Board to review and decide each school district's request provided opportunity for fair consideration of the requests, attendant information, and comments submitted by the certified staff of the districts under section 165.016.5. The reasons for which the State Board granted the 16 school districts' requests for exemptions from the requirements of section 165.016 or revisions of the districts' base year percentage were reasonable and *284 sound. The trial court's conclusion that the State Board did not abuse the discretion legally vested in it or act arbitrarily or capriciously in granting exemptions and revisions to the 16 school districts was supported by substantial evidence and correctly applied the law. Points one, two, and four of MNEA's appeal are denied.

IV. RETROACTIVITY OF SECTION 165.016.4
In its third point on appeal, MNEA claims that the trial court erred in affirming the State Board's determination that the base year revisions of 10 school districts[10] applied retrospectively. It contends that section 165.016.4, which authorizes the State Board to grant a one-year exemption per application or a permanent revision, is ambiguous regarding whether such exemption or revision may apply retroactively and that the State Board's retrospective application of the provision so as to forgive penalties already accrued was unconstitutional.
Article 1, Section 13 of the Missouri Constitution provides that "no ex post facto law, nor law...retrospective in its operation...can be enacted." MO. CONST. art. 1, § 13. Accordingly, in Missouri a statute is presumed to operate prospectively unless the legislative intent that the statute have a retroactive effect clearly appears from the express language of the statute or by necessary or unavoidable implication. Department of Social Servs. v. Villa Capri Homes, Inc., 684 S.W.2d 327, 332 (Mo. banc 1985); Wellner v. Director of Revenue, 16 S.W.3d 352, 354 (Mo.App. W.D.2000). A law is retrospective if it "takes away or impairs vested or substantial rights acquired under existing laws, or imposes new obligations, duties, or disabilities with respect to past transactions." Mendelsohn v. State Bd. of Registration for the Healing Arts, 3 S.W.3d 783, 785-786 (Mo. banc 1999). A substantive law relates to the rights and duties that give rise to a cause of action. Id. at 786. The constitutional prohibition against retrospective laws does not apply, however, to a statute that is procedural or remedial in nature because a litigant has no vested rights in matters of procedure. Id. A procedural or remedial law relates to the machinery for process in the cause of action and prescribes the method of enforcing rights or obtaining redress for their invasion. Id.; Pierce v. State of Missouri Dep't of Social Servs., 969 S.W.2d 814, 822 (Mo.App. W.D.1998).
Section 165.016.4 is not ambiguous regarding its retroactive application. As demonstrated by necessary and unavoidable implication, the General Assembly clearly intended that the State Board's grant of an exemption or revision apply retrospectively to the preceding school year. A school district does not learn of its compliance or noncompliance with the requirements of section 165.016 until after the school year ends. Section 162.821 requires a school district to report to the DESE certain financial data on or about August 15 each year, after the close of the preceding school year. § 162.821, RSMo 1994. The DESE then calculates the district's certificated salary percentage and notifies the district of compliance or noncompliance for the preceding school year on or about January 1. Any school district that does not comply with the certificated salary percentage requirements shall pay a penalty during the year following the notice of violation. § 165.016.6 (emphasis added). During that time, however, a school district may request to be excused from the requirements of section 165.016 and the penalty. Upon receiving a school district's request, the State Board may grant a one-time exemption from the preceding year's noncompliance or a permanent revision of its base year percentage effective for the preceding year. § 165.016.4. Consequently, the State *285 Board's grant of an exemption or revision operates retrospectively to the preceding school year.
Because the presumption normally favoring prospective operation was rebutted in this case by the necessary and unavoidable implication that section 165.016.4 have a retroactive effect, the question becomes whether section 165.016.4 is procedural in nature or whether it affects substantive rights. Villa Capri Homes, 684 S.W.2d at 332. The application of section 165.016.4 does not take away or impair vested rights of certified staff. A vested right "must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand." M & P Enter., Inc. v. Transamerica Fin. Servs., 944 S.W.2d 154, 160 (Mo. banc 1997) (citation omitted). Sections 165.016.1 and 165.016.2 require a public school district to expend a defined percentage of current operating costs for tuition, teacher retirement, and compensation for certificated staff each school year. § 165.016.1 and .2. Any school district that is determined by the DESE to be in violation of this requirement must pay a penalty to the building level administrative staff and nonadministrative certificated staff during the year following the notice of violation. § 165.016.6. Section 165.016.4, however, authorizes the State Board to exempt a school district for one year from the requirements of section 165.016 or permanently revise the base year percentage of a school district upon receiving a request for exemption or revision. A certified staff's right to receive a defined percentage of a district's current operating costs as compensation and/or a penalty for a district's noncompliance with section 165.016.1 or 165.016.2 is, therefore, contingent on whether a district receives an exemption or revision. The granting of an exemption or revision under section 165.016.4 does not take away or impair vested rights of certified staff. Instead, it provides a procedure whereby a school district may, upon receiving from the DESE a notice of violation for the previous school year, request the State Board to exempt it from the requirements of section 165.016 for that previous year or to permanently revise its base year percentage effective the previous year. The rights of certified staff do not become vested until a school district fails to expend the required certificated salary percentage on tuition, teacher retirement, and certificated staff compensation and fails to obtain from the State Board an exemption or revision that excuses its noncompliance for the previous school year pursuant to section 165.016.4. Section 165.016.4 is, therefore, procedural and operates retrospectively.
Section 165.016 became effective in August 1996. Section 165.016 .1 defined the percentage of current operating costs a school district was required to expend for tuition, teacher retirement, and certificated staff compensation for the 1994-1995 and 1995-1996 school years.[11] After receiving notice that they had failed to comply with the requirements for the 1994-1995 and 1995-1996 school years, the 10 school districts at issue in this point filed requests for permanent revisions of their base year percentages. Nine of the school district filed their requests for revisions with the State Board during the year following the notice of violation from December 1996 until September 1997. The Normandy school district, however, did not file its request for revision until May 1998. In September 1998, the Normandy NEA filed a lawsuit against the school district for collection of penalties for the 1994-1995, 1995-1996, and 1996-1997 school years. Thereafter, the Normandy school district amended its request in November 1998 clarifying that it was seeking a base year *286 revision retroactive to the 1994-1995 school year. After reviewing the requests, the State Board granted permanent revisions of the 10 school districts' base year percentages retroactive to the 1994-1995 school year, and the trial court affirmed the State Board's decisions.
As discussed above, the scheme contemplated by the statute is that a request for an exemption or revision must be filed in the year following the notice of violation and the State Board may grant an exemption from the requirements of section 165.016 for the preceding year or a permanent revision of the base year percentage effective for the preceding year. To allow a school district to apply for an exemption or revision anytime in the future for past noncompliance and for the State Board to grant an exemption or revision effective for more than one year in the past would destroy the statute's purpose of requiring a school district to expend a certain percentage of its current operating costs for tuition, teacher retirement, and compensation of certificated staff every year. In one case, however, the State Board may grant an exemption or revision effective more than one year in the past. Section 165.016 contemplates that in the year following the statute's enactment and the first notice of violation, a school district could raise the issue of an exemption or revision back to the 1994-1995 school year. To expect a school district to file a request for an exemption or revision for the 1994-1995 school year in early 1996 before enactment of the statute or the first notice of violation would have been absurd. The earliest opportunity for a school district to request an exemption or revision for the 1994-1995 school year was after enactment of the statute and notice of violation. In this case, nine school districts[12] filed a timely request for revision from December 1996 to September 1997. The trial court's conclusion that the retrospective application of the revisions granted by the State Board to these nine school districts was not unconstitutional or unlawful rested on substantial evidence and correctly applied the law. The judgment regarding those nine school districts is, therefore, affirmed. On the other hand, the Normandy school district's request in May 1998 for retrospective revision of its base year percentage to the 1994-1995 and 1995-1996 school years was not filed at the earliest opportunity. The request for revision was timely only for the 1996-1997 school year. The trial court's conclusion that the State Board properly granted a permanent revision to the Normandy school district effective for the 1994-1995 school year, therefore, misapplied the law. The judgment of the trial court regarding the Normandy school district is reversed to the extent that the permanent revision of its base year percentage applies retrospectively to the 1994-1995 and 1995-1996 school years.

V. GUIDELINES
In the final point of its appeal, MNEA claims that the trial court erred in finding that the State Board's "Guidelines" did not qualify as rules requiring formal rulemaking procedures. MNEA contends that in making its decisions to grant exemptions or revisions under section 165.016.4, the State Board utilized "Guidelines" that were not promulgated according to the rulemaking procedures of section 536.021, RSMo Cum.Supp.1997, of the Missouri Administrative Procedure Act.
Section 161.092 authorizes the State Board to "[a]dopt rules governing its own proceedings and formulate policies for the guidance of the commissioner of education and the department of elementary and secondary education." § 161.092, RSMo 1994. Section 536.010(4) defines a rule as an "agency statement of general applicability that implements, interprets, or prescribes law or policy." § 536.010(4), *287 RSMo 1994. In other words, a rule is an "agency statement of policy or interpretation of law of future effect which acts on unnamed and unspecified persons or facts." Branson R-IV School Dist. v. Labor and Indus. Relations Comm'n, 888 S.W.2d 717, 720 (Mo.App. S.D.1994). An administrative agency need not promulgate rules, however, simply because it has the power to do so. Artman v. State Bd. of Registration for the Healing Arts, 918 S.W.2d 247, 251 (Mo. banc 1996).
In this case, the evidence revealed that the State Board did not utilize "Guidelines" or rules in making its decisions to grant the school districts' requests for exemptions or revisions. The evidence established that approximately one year after the General Assembly enacted section 165.016, the DESE drafted a list of acceptable reasons that had been advanced by the school districts in their requests for exemptions and revisions for the past year and presented the report to the State Board at its September 1997 meeting. The State Board did not vote on the draft "Guidelines" at the meeting. The DESE presented another report containing revised "Guidelines" to the State Board at its November 1997 meeting. Again, the State Board did not vote on the proposed "Guidelines." Although the list drafted by the DESE and presented to the State Board was referred to as "Guidelines," it was not a guide for future decision making but simply a compilation of the reasons school districts had advanced in the past in support of their requests for exemptions or revisions. No evidence was presented that the State Board followed or applied the so-called "Guidelines" in deciding to grant exemptions or revisions. Instead, the State Board made its decisions based on the authority granted to it under section 165.016.4 after considering each request including the reasons for the request stated therein, any certified staff comment received, and the recommendation of the DESE. The trial court did not err in finding that the State Board's "Guidelines" did not qualify as rules requiring formal rulemaking procedures. The point is denied.

VI. CONCLUSION
In conclusion, the trial court's judgment upholding the State Board's decision to grant exemptions or revisions to the Fulton 58, Cameron C-I, Lebanon R-III, Van-Far R-I, Marshall, North Wood R-IV, Raytown C-2, Wright City R-II, Willard R-II, Laredo R-VII, Senath-Hornersville C-8, Fort Osage R-I, Sarcoxie R-II, Moberly, and University City school districts is affirmed. The trial court's judgment upholding the State Board's decision to grant a revision of the Normandy school district's base year percentage is reversed only to the extent that the judgment applies retrospectively to the 1994-1995 and 1995-1996 school years. The trial court's judgment reversing the decision of the State Board to grant exemptions or revisions to the North Kansas City 74, Kingston 42, Winona R-III, Lewis County C-1, Plato R-V, Blue Springs R-IV, Crawford County R-II, Gorin R-III, Malden R-I, Boonville, Waynesville R-VI, Kingsville R-I, and Lockwood R -I school districts is reversed, and the case is remanded to the trial court for joinder of these school districts, if feasible, and if not, for a determination of whether the districts are indispensable parties.
EDWIN H. SMITH, P.J. and ELLIS, J. concur.
NOTES
[1] All statutory references are to RSMo Cum. Supp.1998 unless otherwise indicated.
[2] Fulton 58, Lebanon R-III, Marshall, North Wood R-IV, Raytown C-2, Wright City R-II, Willard R-II, Laredo R-VII, Senath-Hornersville C-8, Fort Osage R-I, Sarcoxie R-II, Moberly, Normandy, University City, North Kansas City 74, Winona R-III, Lewis County C-1, Blue Springs R-IV, Crawford County R-II, Malden R-I, Boonville, Kingsville R-I, and Lockwood R-I.
[3] Cameron C-I, Van-Far R-I, Kingston 42, Plato R-V, Gorin R-III, and Waynesville R-VI.
[4] Fulton 58, Cameron C-I, Lebanon R-III, Van-Far R-I, Marshall, North Wood R-IV, Raytown C-2, Wright City R-II, Willard R-II, Laredo R-VII, Senath-Hornersville C-8, Fort Osage R-I, Sarcoxie R-II, Moberly, Normandy, and University City.
[5] North Kansas City 74, Kingston 42, Winona R-III, Lewis County C-1, Plato R-V, Blue Springs R-IV, Crawford County R-II, Gorin R-III, Malden R-I, Boonville, Waynesville R-VI, Kingsville R-I, and Lockwood R-I.
[6] This opinion should not be read to imply that the State Board is not a necessary party.
[7] Fulton 58, Cameron C-I, Lebanon R-III, Van-Far R-I, Marshall, North Wood R-IV, Raytown C-2, Wright City R-II, Willard R-II, Laredo R-VII, Senath-Hornersville C-8, Fort Osage R-I, Sarcoxie R-II, Moberly, Normandy, and University City.
[8] North Kansas City 74, Kingston 42, Winona R-III, Lewis County C-1, Plato R-V, Blue Springs R-IV, Crawford County R-II, Gorin R-III, Malden R-I, Boonville, Waynesville R-VI, Kingsville R-I, and Lockwood R-I.
[9] Consequently, the State Board's third point on cross-appeal claiming that the trial court erred in reversing its decision to grant exemptions or revisions to 10 of these school districts based on the districts' insufficient notice to their certified staff of their requests for exemptions or revisions is not addressed.
[10] Lebanon R-III, Marshall, North Wood R-IV, Raytown C-2, Willard R-II, Laredo R-VII, Senath-Hornersville C-8, Sarcoxie R-II, Moberly, and Normandy.
[11] The issue of whether section 165.016.1 violates the constitutional prohibition against retrospective laws was not raised by any party and is not addressed in this opinion.
[12] Lebanon R-III, Marshall, North Wood R-IV, Raytown C-2, Willard R-II, Laredo R-VII, Senath-Hornersville C-8, Sarcoxie R-II, and Moberly.