J.L. JACKSON and Elma Jackson,
Respondents,

v.

CITY OF CASSVILLE, Appellant.

No. 28116.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 10, 2007.

David A. Cole, Ellis, Cupps and Cole, P.C., Cassville, for Appellant.

Emory Melton, Melton & Herrin, P.C., Cassville, for Respondents.

ROBERT S. BARNEY, Presiding Judge.

Appellant City of Cassville ("the City") appeals the judgment of the trial court granting J.L. Jackson ("Mr. Jackson") and Elma Jackson's ("Mrs. Jackson") (collectively "Respondents") petition to quiet title as against the City to a portion of a right-of-way along Highway 37 owned by the State of Missouri ("the State") upon which the City had constructed a sidewalk. In its judgment, the trial court determined Respondents had acquired title by adverse possession subject to the State's easement for the previously mentioned right-of-way, and also held that the City's construction of a sidewalk thereon constituted a tres-

pass. Accordingly, the trial court not only quieted title to a portion of the right-of-way in Respondents, but also directed the City to remove the sidewalk and reopen an entrance to Respondents' property it had closed while constructing the sidewalk. The City now raises two points of trial court error.

Viewing the evidence in the light most favorable to the trial court's judgment, *Harris Land Dev., L.L.C. v. Fields,* 139 S.W.3d 275, 280 (Mo.App.2004), the record reveals that on April 2, 1932, Jane Le-Compte ("Ms. LeCompte") executed a "Conveyance for State Highway Purposes" to the State "for [a] right of way ..." on a tract of residential property she owned in Cassville, Missouri. On August 28, 1968, Respondents purchased that tract of land by general warranty deed. In 2002, the City obtained a permit from the State to build a sidewalk on a portion of the right-of-way and the City subsequently constructed a sidewalk upon the right-of-way which ran the length of Respondents' property bordering Highway 37. It is this property that Respondents claimed by adverse possession, subject to the State's right-of-way. Additionally, Respondents' suit alleged the sidewalk was constructed without lawful authority, thus, it was a trespass upon their property; sought relief from the City's destruction of a driveway on their property; and asserted the Missouri Department of Transportation ("Mo-DoT"), a division of the State, had no permission to grant the City a permit to build a sidewalk on the right-of-way owned by the State.

On April 25, 2005, the City filed a Motion to Compel Joinder of the State of Missouri to the lawsuit asserting the State of Missouri was a necessary and indispens-able party pursuant to Rule 52.04.[1] The trial court denied this motion.

At trial Mr. Jackson testified he had been a resident of Cassville since 1936; he and Mrs. Jackson bought their current property on August 28, 1968; they subsequently built a house on that property in 1971; and had lived there continuously since that time.[2] Mr. Jackson stated he and Mrs. Jackson had to alter the terrain of their property significantly in order to create a level lot on which to build the house and that they created a yard that had a gentle sloping grade which went down toward the curb of Highway 37. Mr. Jackson stated they treated their property from the house down to the curb of the highway as part of their yard and maintained it as such.

Mr. Jackson also related the City notified him via letter in 2002 that it was going to construct the sidewalk in question. He testified the sidewalk constructed by the City is approximately five feet wide and is located about five feet from the curb of the highway such that there is a five foot strip of grass between the sidewalk and the curb. He stated the sidewalk runs the length of and through his property where it borders Highway 37 for a distance of approximately 226 feet. He stated that when the City constructed the sidewalk the City removed a second driveway to his property and "broke the end off [his concrete steps]...." He stated the City "just tore [his driveway] out" and "built a curb across ..." the former entrance. Mr. Jackson related that he believed it would cost at least $5,000.00 to remove the sidewalk and replace the driveway.

Mrs. Jackson testified she agreed with Mr. Jackson's testimony relating to the sidewalk. She acknowledged they had

---

1. All Rule references are to Missouri Court Rules (2006).

2. We note Respondents' deed contains no notation relating to the right-of-way at issue.

been in actual, hostile, open, notorious and continuous possession of the right-of-way between the sidewalk and the curb, including the five foot wide strip of grass bordering Highway 37, for 35 years.

Peter Landsted, the City's former administrator, testified he had been involved in the construction of the sidewalk at issue and also involved in the permit application submitted to MoDoT.[3] He stated he felt the City "had permission from the highway to do this [sidewalk] project and [he] was reassured that [it] did."

Darrell Weinkein ("Mr. Weinkein"), a district traffic engineer with MoDoT, testified he was familiar with the sidewalk at issue and was involved in the permit process relating to its construction. He stated that typically a city would submit an application to the State with a set of plans relating to the project; his office would review those plans; and then decide whether to issue a permit for the project. Mr. Weinkein testified that pedestrians were also "users of the highway system" and "so we need to make accommodations for them." He related that MoDoT "provide[s] pavement marking signs for crosswalks, traffic signal ... provisions for pedestrians, and then [it does] allow sidewalk[s] on— on the right-of-way." To the question of whether MoDot believed that sidewalks are an integral part of maintaining an adequate highway system, Mr. Weinkein

answered, "Yes, we do." He also related that MoDoT did not actually construct the sidewalk at issue nor did it initiate the sidewalk's construction; however, it "was responsible for the inspection of the work and acceptance of the work."[4]

■ In its judgment, the trial court determined that Respondents "have acquired title by adverse possession ..." to a parcel of land "in the Smith and Hayes Addition to the City of Cassville, Missouri and containing 0.74 acres more or less," subject to a right-of-way granted to the State by the LeCompte deed of 1932.[5] The trial court further adjudged that while the City purportedly obtained a permit from MoDoT for construction of the sidewalk and the State is permitted to "enter into contracts with cities ... for and concerning the maintenance of, and regulation of traffic on any state highway ...," the evidence adduced "no contract between the State nor the [City] for such maintenance and regulation of traffic pertaining to the real estate in issue." Accordingly, the trial court found "nothing in evidence to demonstrate the construction of the sidewalk was a result of plans of the State Highway Commission as required ..." and that "[t]he act of issuing a permit to the City ... to build a sidewalk was without authority." The trial court quieted title in Respondents to that portion of the right-of-way previously described and found the City

---

3. Neither the permit for constructing the sidewalk nor the permit application and supporting documentation were introduced into evidence at trial.

4. In this connection we note that for certain purposes a "street or highway" has been defined as "the entire distance between property lines of the highway when any part of such distance is used for vehicular traffic. This would include the curbing, parking, sidewalks and all other lands situated between property lines adjoining each side of a highway." *Win-*

*ford v. Barsi,* 92 F.Supp. 110, 111 (D.C.Mo. 1950).

5. "A quiet title action is not designed to adjudicate the plaintiff's title as superior to the whole world, but only as compared to the other *parties.*" *Erwin v. City of Palmyra,* 119 S.W.3d 582, 586 n. 3 (Mo.App.2003) (internal quotation omitted). Here, the City does not specifically challenge that portion of the trial court's judgment quieting title in Respondents.

had trespassed on Respondents' land. Accordingly, the trial court ordered the City to remove the sidewalk in question; "restore the lot and lawn to its contour as it existed before the sidewalk was built in 2002;" and "reopen the entrance which it has closed...." The trial court also awarded Respondents nominal damages of $1.00 together with costs. This appeal by the City followed.

The City's first point relied on asserts the trial court erred "in finding that the construction of the sidewalk was not the result of plans of the [State] because the trial court's judgment is against the weight of the evidence and erroneously applies the law." The City maintains "the evidence established that the [State] issued a permit to the [City] to construct the sidewalk."

In its second point relied on, the City argues that if the State "is not joined as a party to this action, the State is not prohibited from relitigating the question of their authority to issue permits to third parties granting them the right to construct sidewalks on highway right-of-ways." The City also maintains the trial court misapplied Rule 52.04 "in that disposition of this action as a practical matter impairs and impedes the State['s] ability to grant permits for construction of sidewalks on highway right-of-ways." This point is dispositive; consequently, we will only address this point.

We observe that the second count of Respondents' petition asserted the City "entered upon [Respondents'] real estate without lawful authority and committed a trespass thereon" in that the City did not have "lawful authority" from the State to construct the sidewalk at issue. Respondents requested the trial court to order the City to remove the sidewalk and re-open their driveway as a consequence of the City's purported unlawful trespass. Re-

spondents argued at trial, and in this appeal, that the State had no authority to issue a permit to the City to build a sidewalk. Specifically, Respondents asserted that "[i]t is illegal for [the State] to contract with the [City] for permission to construct a sidewalk on the easement granted to [the State] 'for the purpose of constructing or maintaining a State Highway according to the plans of the State Highway Commission.'"

In response to this argument, the City argues that in order to decide the aforementioned issue of the legality of the permit issued to it by the State, the State must be joined in the lawsuit as a necessary and indispensable party. According to the City, the very purpose of the joinder rule, which seeks to avoid unnecessary relitigation of issues, would be defeated by not including the State in this action. *See* Rule 52.04. This Court agrees.

 Rule 52.04(a) sets out, in part:
A person shall be joined in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party.

"A necessary person is one who is so vitally interested in the subject matter of controversy that a valid judgment cannot be effectively rendered without the party's presence." *Mo. Nat'l Educ. Ass'n v. Mo.*

*State Bd. of Educ.,* 34 S.W.3d 266, 277 (Mo.App.2000). "An interest in the subject of an action does not include a mere, consequential, remote or conjectural possibility of being affected by the result of the action in some manner." *Id.* "Instead, the interest must be such a direct claim upon the subject matter of the action that the person will either gain or lose by direct operation of the judgment." *Id.* "[F]ailure to join a necessary party is so fundamental and jurisdictional that we must consider the issue *sua sponte.*" *Feinberg v. Feinberg,* 924 S.W.2d 328, 331 (Mo.App.1996). An action may proceed without a necessary party if joinder is unfeasible. *Clark v. Fitzpatrick,* 801 S.W.2d 426, 430 (Mo.App.1990).

■ "We review the trial court's denial of relief under this Rule only to determine if it is supported by substantial evidence, is against the weight of the evidence, or it erroneously declares or misapplies the law." *Williams Pipeline Co. v. Allison and Alexander, Inc.,* 80 S.W.3d 829, 837 (Mo.App.2002).

As already stated, Rule 52.04(a)(2)(i) sets out that a party is a necessary party if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest. . . ." *See also Feinberg,* 924 S.W.2d at 331.[6]

■ Here, while the trial court's judgment quieting title adjudicated title between Respondents and the City, the trial court's judgment also found the State's "act of issuing a permit to the City . . . to build a sidewalk was without authority." Such an order in this case may, as a practical matter, impinge on the right of the State to build and maintain its highways and right-of-ways. By issuing a permit to the City to construct a sidewalk on its right-of-way the State has by its express action "claimed an interest relating to the subject of [this] action." Rule 52.04(a)(2). Further, the judgment in the present matter which found the State cannot issue permits in such situations obviously "as a practical matter impair[s][and] impede[s] the [State's] ability to protect [its] interest[s] . . . ." Rule 52.04(a)(2)(i). "If one who is not a party to an action is found to be a necessary party under Rule 52.04(a), and it is feasible to join him, he must be joined." *Bunker R–III School Dist. v. Hodge,* 666 S.W.2d 20, 24 (Mo.App. 1984). We determine that the State is a necessary party to this action under Rule

---

**6.** In *Feinberg,* 924 S.W.2d at 329–30, judgment creditors, who were successful in their suit against judgment debtors, filed applications for charging orders against the debtors' partnership interest. One of the debtors was Dan Feinberg ("Dan"), whom the trial court found had fraudulently transferred part of his partnership interests to his wife, Susan Feinberg ("Susan"). *Id.* However, Susan *had never been made a party to the litigation,* nor had the trial court raised the issue. *Id.* at 331. The reviewing court in *Feinberg* observed that the joint ownership of property by spouses raised a presumption of tenancy by the entirety. *Id.* Accordingly, the court found the marital union owned the property subject to the charging orders. *Id.* The reviewing court determined that "[t]his interest is 'such a direct claim upon the subject matter' of the instant charging orders that each spouse will 'gain or lose by direct operation of the judgment to be rendered.'" *Feinberg,* 924 S.W.2d at 331 (quoting *Brentmoor Place Residents Ass'n v. Warren,* 774 S.W.2d 877, 879 (Mo.App.1989)). As a consequence, the reviewing court noted that "under Rule 52.04(a)(2)(i), disposition of the action in Susan's absence may 'as a practical matter impair or impede her ability to protect that interest.'" *Id.* (quoting Rule 52.04). The *Feinberg* court then *sua sponte* held that "Susan is a necessary party;" reversed the trial court's order against "Dan's partnership interests;" and remanded the case "to join Susan as a party-defendant if feasible." *Id.*

52.04 and it can be feasibly joined to the suit in the present matter. *See also* Rule 52.04(b).

Accordingly, that part of the trial court's judgment quieting title in Respondents is affirmed. The remainder of the judgment is reversed and the matter is remanded for further proceedings with directions to the trial court to join the State as a necessary party to this action. *See Feinberg*, 924 S.W.2d at 331; *Rocky Ridge Ranch Prop. Owners Ass'n v. Areaco Inv. Co.*, 993 S.W.2d 553, 557 (Mo.App.1999).

RAHMEYER, J., and LYNCH, C.J., concur.