IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Brief May 30, 2019

**STATE OF TENNESSEE v. COY JEWEL MAYBERRY**

**Appeal from the Circuit Court for Cocke County**
**No. 7732        Carter S. Moore, Judge**

**No. E2018-01597-CCA-R3-CD**

A Cocke County jury found the Defendant, Coy Jewel Mayberry, guilty of rape of a child, and the trial court sentenced the Defendant to forty years of incarceration. The Defendant contends that the evidence is insufficient to sustain his conviction and that the trial court erred when it imposed the maximum allowable sentence. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Keith E. Haas, Newport, Tennessee, for the Appellant, Coy Jewel Mayberry.

Herbert H. Slattery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Tonya K. Thornton, Assistant District Attorney General for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

A Cocke County grand jury indicted the Defendant for rape of a child and aggravated sexual battery. The State dismissed the aggravated sexual battery charge prior to trial and proceeded on the rape of a child charge.

**A. Trial**

At the Defendant's trial, the State presented the following evidence:

The victim testified that she was thirteen years old at the time of trial. The victim stated that she lived with her grandparents along with her two sisters. Her mother, the Defendant's wife, lived together with one of the victim's other sisters. The victim had lived with her grandparents for most of her life but visited with her mother. When the victim's school was not in session, she spent the day at the Boys and Girls Club, which was located close to her mother's home. The victim's grandparents would leave her at her mother's home until the club opened for the day. She would return to her mother's home in the afternoon to wait for her grandparents to pick her up. The Defendant was usually at the victim's mother's home during these times.

Testifying about 2016, the victim stated that she knew what sex was at the time. She had learned about sex in school but had never had intercourse. The victim sometimes spent the night at her mother's house, and, on those nights, the victim and her sister slept in bed with their mother, and the Defendant slept on the couch.

One night in 2016, the victim left the Boys and Girls Club and went to her mother's house; she asked to spend the night, and her grandparents and mother agreed. She watched a movie with her mother and the Defendant in the living room of her mother's home. The victim and her mother watched the movie while seated on the living room couch and the Defendant was seated in a chair. At some point during the movie, the victim's mother got scared and left the room. The Defendant then sat on the couch with the victim; he smelled of alcohol. The Defendant moved closer to the victim, getting in her "bubble" or personal space. His shoulders and legs were touching the victim's, and she asked him to move away from her. The Defendant put a pillow over the victim's face and pulled down her shorts to her knees. The Defendant also pulled down his shorts and got on top of the victim, putting his penis in her vagina. The Defendant was moving while his penis was inside the victim's vagina in a "back and forth rotation." At some point the victim's mother coughed in the other room, and the Defendant got up from the couch and went outside. The victim locked herself in the bathroom and used the toilet; she found blood on the toilet paper she used. She then went to her mother's room and lay down in her mother's bed. She did not tell her mother what had happened.

The next day, the victim returned to her grandparents' house. She did not tell them what had happened right away but did so a short period of time later in December of 2016. The victim's grandmother contacted law enforcement. The victim later participated in a forensic interview. The victim testified that the Defendant told her if she told anyone he would rape her again.

On cross-examination, the victim testified that she had lived with her grandparents since she was two years old. The victim stated that her grandparents served as the parental

2

authority in her life and that her mother was more like a sister. The victim agreed that she had a boyfriend in 2016.

The victim testified that she was interviewed by a woman named Jenny in 2017 at "Safe Harbor." The victim agreed that some of what she had testified to in court had not been mentioned in her interview with Jenny. A video recording of the interview was played for the jury.[1] The victim agreed that she did not scream for her mother while the Defendant raped her. The victim said she did not tell anyone about the rape immediately after it occurred because she felt no one cared.

The victim's grandmother testified that in December of 2016, the victim told her that something had happened between the victim and the Defendant. The victim told her grandmother "details" about what had happened, and the victim's grandfather contacted law enforcement. The victim's grandmother realized that the victim had been losing weight and become more reserved prior to her disclosure. The victim's grandfather testified that he immediately contacted the authorities when he learned of the Defendant's actions.

C.J. Ball testified that he worked at the sheriff's office in 2016 and that the victim's grandfather contacted him about the victim's allegations against the Defendant. The victim's grandmother eventually called Detective Ball and relayed the details of the victim's allegations which he forwarded to the Department of Children's Services on December 28, 2017.

Based on this evidence, the jury convicted the Defendant of rape of a child.

## B. Sentencing

At the Defendant's sentencing hearing, the following evidence was presented: The victim's grandmother testified that the victim was thirteen years old at the time of sentencing and lived with her grandmother. She testified about the impact of the Defendant's crimes on the victim, including that the victim became withdrawn after the rape, as well as had a poor appetite and no desire to socialize. The victim was irritable and lost approximately thirty pounds. Since the Defendant's trial, the victim continued to be withdrawn and private, and she continued to go to counseling. The victim's grandmother stated that the Defendant had been married to the victim's mother at a certain point. The victim's grandmother stated that her family had helped the Defendant financially and given him a place to live in the past.

---

[1]The video was not entered into the record as an exhibit and is not included in the record on appeal.

The trial court stated that the Defendant would be sentenced as a Range II offender based on his felony conviction for rape of a child. T.C.A. § 39-13-522(b)(2)(A). The trial court found that none of the potential mitigating factors applied in this case. The trial court gave "some" weight to enhancement factor (1), that the Defendant had a previous history of criminal convictions. T.C.A. § 40-35-114(1). The trial court applied enhancement factor (14), that the Defendant was in a position of trust when he abused the victim, who was also his wife's daughter, while she was in his care in a step-parent role. T.C.A. § 40-35-114(14). The trial court sentenced the Defendant to forty years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant asserts that the evidence is insufficient to sustain his conviction and that the trial court erred when it imposed the maximum allowable sentence. The State responds that the evidence is sufficient to sustain the Defendant's conviction for rape of a child and that the trial court sentenced him properly.

## A. Sufficiency of the Evidence

The Defendant argues that the evidence is insufficient to sustain his conviction for rape of a child because the victim's testimony was inconsistent with her forensic interview, as was the victim's behavior after the rape with her behavior at trial. The State responds that the evidence presented established the statutory elements for the offense beyond a reasonable doubt, and that any inconsistencies in the victim's testimony were resolved by the jury's verdict. We agree with the State.

When a defendant challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184

4

S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A conviction for rape of a child requires "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a) (2014). Tennessee Code Annotated section 39-13-501(6) and (7) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of

a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body . . . ." and sexual contact as "the intentional touching of the victim's, the defendant's, or any other person's intimate parts. . . ." There is sexual penetration, in a legal sense, if there is the "slightest penetration" of a female's sexual organ. *State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001). This includes the "outer folds" of the vagina. *Id.*

In the present case, the evidence presented at trial, viewed in the light most favorable to the State, was that the victim, younger than thirteen years old at the time, spent her afternoon or evenings at her mother's house during the summer. The Defendant also resided there. The victim sometimes spent the night and, on a particular night that the victim stayed over, the Defendant covered her head with a pillow and penetrated her vagina with his penis. This is sufficient evidence from which a jury could conclude beyond a reasonable doubt that the Defendant was guilty of rape of a child. Additionally, the recorded forensic interview is not included in the record, providing us with no evidence of the alleged inconsistencies. However, as we have stated, any inconsistencies in the victim's testimony with her prior statements or interviews were resolved by the jury's verdict, and we will not insert a credibility judgment at the appellate level. *See Bland,* 958 S.W.2d at 659; *Cabbage*, 571 S.W.2d at 835. The Defendant is not entitled to relief.

## B. Sentencing

The Defendant also contends that the trial court erred when it sentenced him to the maximum allowable sentence within the range given that, without the requirement of Tennessee Coda Annotated section 39-13-522(2)(a) that he be sentenced as a Range II offender, his prior criminal history would have put him as a Range I offender. This fact, he argues, should have led the trial court to depart from the maximum sentence. The State responds that the trial court properly exercised its discretion when it ordered the Defendant to serve the maximum sentence within the statutorily required sentencing range. We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within

the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2014).

We conclude that the trial court properly sentenced the Defendant. The Defendant was statutorily mandated to be sentenced as a Range II offender. *See* T.C.A. § 39-13-522(b)(2)(A). The trial court considered the relevant principles and sentenced the Defendant to a within range sentence. Relevant to enhancement factor (14), the evidence presented at sentencing was that the Defendant was in a relationship with the victim's mother and living in her home when he raped the victim. The victim was in the Defendant's and her mother's care at the time of the rape. This is sufficient evidence to support the application of this enhancement factor, that the Defendant was in a position of trust at the time of the crime. We note that "the application of a single enhancement factor is sufficient to justify the imposition of the maximum sentence in the range." *State v. James Moore*, No. W2015-01483-CCA-R3-CD, 2016 WL 7654955, at *5 (Tenn. Crim. App., at Jackson, Aug. 23, 2016), *no Tenn. R. App. P. 11 filed*. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE